108 P.3d 996

William BLAHD and Elizabeth Blahd, husband and wife, Plaintiffs–Appellants,

v.

RICHARD B. SMITH, INC., an Idaho Corporation, now doing business as Windermere Real Estate; Richard B. Smith, d/b/a The Windemere Company; Franklin B. Smith, Jr., Georgene M. Smith, Orin R. Givens and Genevieve Givens, d/b/a North Mountain Development Company; Robert P. Jones, d/b/A Robert P. Jones Company; Dean Briggs; Briggs Engineering, Inc., an Idaho corporation, Defendants–Respondents,

and

Peter Gysling and Kimberly B. Gysling, husband and wife; Craig Groves; Park Pointe Realty, now doing business as John L. Scott Real Estate; John Does 1–10; and Doe Companies 1–10, Defendants,

Richard B. Smith, Inc., Windermere Real Estate; Richard B. Smith, The Windermere Company; Franklin B. Smith, Jr. and Georgene M. Smith, and North Mountain Development Company, Cross–Claimants,

v.

Peter Gysling, Kimberly B. Gysling, Robert P. Jones, Robert P. Jones Company, Craig Groves, Park Pointe Realty, John L. Scott Real Estate, Dean Briggs; Briggs Engineering, Inc., an Idaho Corporation; and John Does 1–10; and Doe Companies 1–10, Cross–Defendants.

No. 29709.

Supreme Court of Idaho, Boise, December 2004 Term.

March 4, 2005.

Hawley Troxell Ennis & Hawley, LLP, Boise, for appellants. Joseph D. McCollum Jr. argued.

Brassey Wetherell Crawford & McCurdy, LLP, Boise, for respondents Richard B. Smith, Inc., Richard B. Smith d/b/a The Windemere Company, Franklin B. Smith, Jr., Georgene M. Smith, Orin R. Givens and Genevieve Givens, d/b/a North Mountain Development Company. Andrew C. Brassey argued.

Westberg, McCabe & Collins, Ctd., Boise, for respondents Robert P. Jones and Robert P. Jones Company. William D. Collins argued.

Anderson, Julian & Hull, LLP, Boise, for respondents Dean Briggs and Briggs Engineering, Inc. Robert A. Anderson argued.

TROUT, Justice.

Appellants, William and Elizabeth Blahd (the Blahds), bought a house on a hillside. When it was discovered that the ground underneath the house was settling, causing damage to the house, the Blahds brought suit against several entities, including the developer of the subdivision and two engineering firms. The Blahds appeal the district court's grant of summary judgment to some of the defendants.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Originally, North Mountain Development Company owned the undeveloped land where the Blahds' house is presently located. Several parties aided in developing the surrounding area into a subdivision, including: Richard B. Smith, Inc., doing business as Windermere Real Estate; Richard B. Smith, doing business as The Windemere Company; Franklin B. Smith, Jr.; Georgene M. Smith; Orin R. Givens and Genevieve Givens, doing business as North Mountain Development Company; (collectively the Smith Entities). The Smith Entities' development included grading, road construction, landscaping, and installing sewer and other utilities in the subdivision. The Smith Entities hired Robert P. Jones, P.E., doing business as Robert P. Jones Company (Jones), to perform a soil and foundation investigation. In 1988, North Mountain Development Company sold the lot to Peter and Kimberly Gysling (the Gyslings). Prior to constructing the house that is the subject of this lawsuit, the Gyslings hired Jones to examine the soil of their lot to determine if it was suitable for residential construction. Jones told the Gyslings the soil was adequate for residential construction if a few minor recommendations were followed. The Gyslings, acting as the general contractor, then constructed the house.

In January of 1996, the Blahds hired a real estate agent to assist them in acquiring a house in Boise. While touring the Gyslings' house, Mr. Blahd and the real estate agent noticed a crack in a concrete slab in the hallway of the unfinished basement. The crack was approximately ½ inch wide and had a vertical offset of ¼ to ½ inch between the edges of the crack. Mrs. Blahd was also aware of this crack. The Blahds' real estate agent requested Dean Briggs, a professional engineer from Briggs Engineering, Inc. (Briggs), to conduct a visual inspection of the crack. Briggs told the Blahds the crack in the basement slab was a shrinkage crack and that the slab appeared to be in a stable condition. Based in part on Briggs' recommendation, the Blahds purchased the house in April 1996. The Blahds moved into the house in July 1996 and began to remodel. Part of this remodel included placing slate tile over the crack in the basement hallway.

In December 1996, the newly laid tile cracked and began breaking up in the same place where the original crack was located. In early 1997, a newly installed door in the basement became difficult to close and additional cracks started to appear around the windows on the main floor. During the spring or summer of 1997, the Blahds believed the western side of their house was sinking and asked an architect to examine their house. The architect told them it looked like the house was sinking and that he did not know whether it was from poor drainage or the land not being properly compacted. In 1999, the Blahds hired Strata, an engineering firm, to inspect their house. Strata concluded the cracks were caused by the settlement of thirty feet of improperly compacted fill dirt that was supporting the house. On September 3, 1999, the Blahds filed a complaint against several parties, including the Smith Entities, Jones and Briggs. The complaint alleged the Smith Entities were negligent in selecting, preparing and selling the building site; Jones was negligent in performing the engineering inspection; and Briggs negligently inspected the house. The Smith Entities and Jones moved for summary judgment on the ground that the Blahds' negligence claims were barred by the economic loss rule. The district court granted both motions. Briggs moved for summary judgment on the ground that the Blahds' negligence claim was time-barred by the statute of limitations. The district court granted Briggs' motion and the Blahds now appeal.

## II.

### STANDARD OF REVIEW

In an appeal from a grant of summary judgment, this Court's standard of review is the same as the district court's standard in ruling upon the motion. *Thomson v. Lewiston*, 137 Idaho 473, 475–76, 50 P.3d 488, 490–91 (2002). Summary judgment must be granted when "the pleadings, depositions, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). On review, this Court "liberally construes the record in a light most favorable to the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor." *Brooks v. Logan*, 130 Idaho 574, 576, 944 P.2d 709, 711 (1997).

## III.

## ANALYSIS

### A. The Economic Loss Rule Bars the Blahds' Claims Against the Smith Entities and Jones

*Economic Loss Rule*

 Unless an exception applies, the economic loss rule prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another. *Duffin v. Idaho Crop Improvement Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1995); *Tusch Enters. v. Coffin*, 113 Idaho 37, 41, 740 P.2d 1022, 1026 (1987); *Clark v. International Harvester Co.*, 99 Idaho 326, 336, 581 P.2d 784, 794 (1978). The rule "applies to negligence cases in general; its application is not restricted to products liability cases." *Ramerth v. Hart*, 133 Idaho 194, 197, 983 P.2d 848, 851 (1999) (citations omitted). "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Salmon Rivers Sportsman Camps, Inc., v. Cessna Aircraft Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975). On the other hand, "[p]roperty damage encompasses damage to property other than that which is the subject of the transaction." *Id.* The Blahds argue any damage to the house is property damage and that the subject of the transaction was the improperly filled and compacted lot, not the house that was later constructed on the lot. The Smith Entities and Jones argue the house and lot must be considered an integrated whole and any damage to the house is purely economic loss because both the house and the lot are the subject of the

transaction. Prior decisions of this Court are instructive on what the "subject of the transaction" is.

In *Tusch Enterprises*, a seller hired a contractor to level a hill to prepare the area for construction. The seller participated in the site preparation, hired a builder to construct a duplex on the site and sold the duplex to a buyer. The buyer then discovered the duplex was damaged because the foundation was defective. The buyer sued the seller and the builder alleging negligence in preparing the foundation. This Court held the economic loss rule barred the negligence claims because the damage to the duplex caused by the defective foundation was purely economic. *Tusch Enters.*, 113 Idaho at 41, 740 P.2d at 1026. This Court later explained in another case that it "considered the duplex itself, rather than its construction, to be the subject of the transaction." *Ramerth*, 133 Idaho at 197, 983 P.2d at 851.

In *Ramerth*, an airplane owner sued a repairman alleging the repairman's negligent servicing and inspection of the airplane caused damage to the engine and aircraft. The airplane owner argued the economic loss rule did not bar his negligence claim because the subject of the transaction was the repairman's services, not the engine or airplane that was serviced. This Court rejected that argument and held the damage to the engine and the aircraft were purely economic and therefore, subject to the economic loss rule. 133 Idaho at 197, 983 P.2d at 851. These cases indicate the word "transaction," for purposes of the economic loss rule, does not mean a business deal—it means the subject of the lawsuit.

 Like the duplex in *Tusch Enterprises*, the Blahds' house is damaged because the foundation is settling. The damage to the Blahds' house is similar to the duplex damage in *Tusch Enterprises*, where this Court held the losses were economic. The Blahds seek to distinguish their case by noting the buyer in *Tusch Enterprises* did not sue the contractor who leveled the lot and did not allege the property had been leveled negligently. The fact that the buyer in *Tusch Enterprises* only sued the builder and the

seller is immaterial. It is the subject of the transaction that determines whether a loss is property damage or economic loss, not the status of the party being sued. The Blahds purchased the house and lot as an integrated whole. Like the leveled lot and duplex in *Tusch Enterprises,* the subject of the transaction in this case is both the lot and the house. That being the case, the damages to the Blahds' house are purely economic and the Blahds' negligence claims against the Smith Entities and Jones are barred by the economic loss rule.

*Special Relationship Exception*

 "[A]n exception to the economic loss rule is applicable in cases involving a 'special relationship' between the parties." *Duffin v. Idaho Crop Improvement Assoc.,* 126 Idaho 1002, 1008, 895 P.2d 1195, 1201 (1995)(quoting *Just's, Inc. v. Arrington Construction Co., Inc.,* 99 Idaho 462, 470, 583 P.2d 997, 1005 (1978)).

> The term "special relationship," ... refers to those situations where the relationship between the parties is such that it would be equitable to impose such a duty. In other words, there is an extremely limited group of cases where the law of negligence extends its protections to a party's economic interest.

*Duffin,* 126 Idaho at 1008, 895 P.2d at 1201. There are only two situations in which this Court has found the special relationship exception applies. One situation is where a professional or quasi-professional performs personal services. *McAlvain v. General Ins. Co. of America,* 97 Idaho 777, 780, 554 P.2d 955, 958 (1976). In *McAlvain,* an insured expressly requested his insurance agent provide complete insurance coverage on the insured's business inventory. The insurance agent knew or should have known the amount of insurance that was needed to completely cover the value of the inventory. A fire destroyed the inventory and the insurance coverage was insufficient to cover the loss. This Court held:

> When an insurance agent performs his services negligently, to the insured's injury, he should be held liable for that negligence just as would an attorney, architect, engineer, physician or any other professional who negligently performs personal services.

*Id.* at 780, 554 P.2d at 958.

 The other situation involving a special relationship is where an entity holds itself out to the public as having expertise regarding a specialized function, and by so doing, knowingly induces reliance on its performance of that function. *Duffin,* 126 Idaho at 1008, 895 P.2d at 1201. In *Duffin,* the Idaho Crop Improvement Association was the only entity in Idaho authorized to certify seed potatoes. The Association held itself out to the public as having expertise in seed certification and induced reliance on that expertise. The Federal–State Inspection Service also inspected seed for diseases. A farmer relied on the Association's expertise and bought the certified seed. Later, it was discovered the seed was defective and the farmer suffered economic losses. This Court held a special relationship existed between the farmer and the certifying Association because the Association had "engaged in a marketing campaign ... to induce reliance by purchasers on the fact that seed ha[d] been certified." *Id.* However, this Court explained the special relationship exception did not apply to the Federal–State Inspection Service because there was no evidence in the record to "conclude that it ha[d] actively sought to induce reliance on the part of purchasers of certified seed." *Id.*

As real estate developers of the lot in question, the Smith Entities may arguably be considered quasi-professional. Even if they are, there is no evidence showing the Smith Entities performed a personal service for the Blahds or held themselves out as having a special and unique expertise. Furthermore, even if the Smith Entities marketed the lot in question to the general public, there is no indication in the record that the Blahds relied on those representations. Accordingly, there is no special relationship between the Blahds and the Smith Entities.

 The Smith Entities hired Jones to supervise the lot preparation and provide geotechnical services. The Gyslings also hired Jones to inspect the soil on the lot and

determine whether it was adequate for residential construction. There is no indication in the record that the Blahds relied upon or were even aware of Jones' services regarding the lot. Like the lack of evidence regarding inducement of reliance by the Federal–State Inspection Service in *Duffin,* there is no evidence in the record showing Jones actively sought to induce the Blahds to rely on its services. Therefore, the special relationship exception does not apply to Jones.

*Unique Circumstances Exception*

■ Although this Court has recognized the existence of the unique circumstances exception to the economic loss rule, it has never applied the exception. *Just's Inc. v. Arrington Constr. Co.,* 99 Idaho 462, 470, 583 P.2d 997, 1005 (1978). In *Just's Inc.,* the lessee of a business in a local improvement district brought an action against a contractor engaged in renovating the district, for negligent diversion of the lessee's prospective customers. After explaining the economic loss rule, this Court stated the unique circumstances exception involves "unique circumstances requiring a different allocation of risk." *Just's Inc.,* at 470, 583 P.2d at 1005. This Court then stated the exception did not apply. *Id.*

The exception was also mentioned in *Duffin:*

> Economic loss might also be recovered in tort where the occurrence of a unique circumstance requires a different allocation of the risk. [Citations omitted]. However, the certification of seed potatoes is not a "unique circumstance" requiring a re-allocation of the risk, and the Duffins do not so contend. Therefore, this exception is . . . not implicated.

*Duffin,* at 1007–1008, 895 P.2d at 1200–1201. The purchase of a residential house is an everyday occurrence and does not create the type of unique circumstances required to justify a different allocation of risk, particularly where it appears there may be other defendants available to respond in contract damages. Therefore, the unique circumstances exception does not apply and the district court's grant of summary judgment in favor of the Smith Entities and Jones is affirmed.

## B. The Blahds' Negligence Claim Against Briggs is Barred by Idaho Code Section 5–219(4)

■ Both parties agree the Blahds' claim against Briggs is subject to the two-year statute of limitations set forth in I.C. § 5–219(4). That section states professional malpractice refers to "wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho." I.C. § 5–219(4). The section also states:

> Within two (2) years . . . [a]n action to recover damages for professional malpractice . . . shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting there from or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer. . . .

■ This Court has held that "an action for professional malpractice shall be deemed to have accrued for the purpose of I.C. § 5–219(4) only where there is objective proof that would support the existence of *some actual damage.*" *Chicoine v. Bignall,* 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992)(emphasis added). Although damage must be objectively ascertainable, I.C. § 5–219(4) does not require the plaintiff to have discovered the damage before the statute of limitations begins to run. *Tingley v. Harrison,* 125 Idaho 86, 89, 867 P.2d 960, 963 (1994). Damages are "objectively ascertainable" when there is objective proof that would support the existence of an actual injury. *Hawley v. Green,* 117 Idaho 498, 502, 788 P.2d 1321, 1325 (1990)(quoting *Davis v. Moran,* 112 Idaho 703, 709, 735 P.2d 1014, 1020 (1987)).

The record reveals that as early as December 1996, previous repairs to the crack in the basement hallway needed to be fixed again. During early 1997, the Blahds noticed additional cracks in the interior of the house and a newly installed door became difficult to close. At the very latest, damage was "ob-

jectively ascertainable" during the spring or summer of 1997, when both the Blahds and an architect believed the western side of the house was observably sinking. The complaint in this case was filed on September 3, 1999. Because there was objectively ascertainable damage more than two years before that filing date, the Blahds' negligence claim against Briggs is beyond the statute of limitations and barred by I.C. § 5–219(4). The district court's grant of summary judgment in favor of Briggs is affirmed.

### C. No Attorney Fees Are Awarded

The Blahds seek attorney fees under I.C. § 12–120(3). Because they are not the prevailing party, the Blahds are not entitled to fees. The Smith Entities, Jones and Briggs argue they should each be awarded attorney fees on appeal under I.C. § 12–121. An award of attorney fees is appropriate on appeal under I.C. § 12–121 when the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 652, 39 P.3d 588, 592 (2001). Because this appeal was not frivolous, unreasonable or without foundation, the request for attorney fees on appeal is denied.

### IV.

### CONCLUSION

The district court's grant of summary judgment in favor of the Smith Entities and Jones is affirmed because the Blahds' negligence claims against the Smith Entities and Jones seek only economic losses and neither the special relationship exception nor the unique circumstances exception applies. The district court's grant of summary judgment in favor of Briggs is affirmed because the Blahds' negligence claim is barred by I.C. § 5–219(4). We award costs on appeal to respondents.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and KIDWELL, Pro Tem concur.