**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MOUNTAIN BIRD, INC.; SPIRIT AIR, INC.,

      Plaintiffs-Appellants,

v.

GOODRICH CORPORATION; CESSNA AIRCRAFT COMPANY,

      Defendants-Appellees.

No. 09-3017
(D.C. Nos. 2:06-CV-02365-KHV and 2:05-MD-01721-KHV)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

Mountain Bird, Inc. and Spirit Air, Inc. appeal the district court's dismissal of their tort claims under Idaho's economic loss rule. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

**I**

In June 1999, Spirit Air ordered a Cessna Model 208B aircraft from the Cessna Aircraft Company ("Cessna"). The plane featured an optional de-icing system "Certified for Flight in Icing Conditions" for which Spirit Air paid an extra $46,515. Shortly after the plane was delivered, Spirit Air purchased an after-market de-icing system that was installed by Western Aircraft, Inc. Spirit Air claims both de-icing systems were manufactured by the Goodrich Corporation ("Goodrich").

Spirit Air then leased the plane to Mountain Bird, Inc. d/b/a Salmon Air, which operated an air cargo service. On December 6, 2004, the plane crashed near Bellevue, Idaho, killing the pilot and one passenger, and destroying the plane. Spirit Air[1] alleges that the crash was caused by ice accumulation.

In July 2006, Spirit Air filed suit against Cessna and Goodrich in the United States District Court for the District of Idaho asserting claims for strict products liability and negligence, and seeking $1.4 million in damages—the claimed value of the aircraft. The Judicial Panel on Multidistrict Litigation transferred the case to the District of Kansas, which maintains a master docket for Cessna 208 Series litigation. Both defendants filed dispositive motions arguing that Idaho's economic loss rule barred Spirit Air's claims. The district court agreed and entered summary judgment in favor of defendants. It later certified its judgment as final pursuant to Fed. R. Civ. P. 54(b). Spirit Air timely

---

[1] For ease of reference, we use "Spirit Air" hereinafter to refer to both appellants.

appealed.

## II

We review a grant of summary judgment de novo. Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000). A party is entitled to summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. Id.

The parties agree that Idaho law applies to this action. Idaho has adopted the economic loss rule, which bars the buyer of a product from recovering "economic losses" through tort. Blahd v. Richard B. Smith, Inc., 108 P.3d 996, 1000 (Idaho 2005). "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." Salmon Rivers Sportsman Camps, Inc., v. Cessna Aircraft Co., 544 P.2d 306, 309 (Idaho 1975). By contrast, "[p]roperty damage encompasses damage to property other than that which is the subject of the transaction." Id.

"Broadly speaking, the economic loss rule is intended to maintain the boundary between contract law and tort law." Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d 1146, 1162 (10th Cir. 2008) (quotation omitted). In determining whether the economic loss rule bars a claim, Idaho courts have focused on the duty alleged to have been breached. "To found an action in tort, there must be a breach of duty apart from the nonperformance of a contract." Taylor v. Herbold, 483 P.2d 664, 669 (Idaho 1971).

-3-

In Clark v. International Harvester Co., 581 P.2d 784 (Idaho 1978), the Idaho Supreme Court illustrated this point. There, plaintiff Clark attempted to recover economic losses based on his claim that an International Harvester tractor he purchased was negligently designed. Id. at 787. The court described the differing duties imposed under tort and contract, and the operation of the economic loss rule as follows:

> The law of negligence requires the defendant to exercise due care to build a tractor that does not harm person or property. If the defendant fails to exercise such due care it is of course liable for the resulting injury to person or property as well as other losses which naturally follow from that injury. However, the law of negligence does not impose on International Harvester a duty to build a tractor that plows fast enough and breaks down infrequently enough for Clark to make a profit in his custom farming business. This is not to say that such a duty could not arise by a warranty—express or implied—by agreement of the parties or by representations of the defendant, but the law of negligence imposes no such duty.

Id. at 794 (footnote omitted).

Spirit Air contends that its claims are rescued by three exceptions to the economic loss rule: (1) the "special relationship" exception; (2) the "unique circumstances" exception; and (3) the "parasitic loss" exception. We consider each infra.

**A**

"Ordinarily, a breach of contract is not a tort. A contract may, however, create a state of things which furnishes the occasion for a tort." Taylor, 483 P.2d at 669. Recognizing "the relation of the plaintiff and the defendants" can give rise to a "duty to take due care," the Idaho courts sometimes permit the recovery of economic losses otherwise barred by the economic loss rule under the special relationship exception. Id.

This exception arises when "the relationship between the parties is such that it would be equitable to impose such a duty. In other words, there is an extremely limited group of cases where the law of negligence extends its protections to a party's economic interest." Duffin v. Idaho Crop Improvement Ass'n, 895 P.2d 1195, 1201 (Idaho 1995).

Idaho has recognized only two special relationships as exceptions to the economic loss rule: (1) "where a professional or quasi-professional performs personal services"; and (2) "where an entity holds itself out to the public as having expertise regarding a specialized function, and by so doing, knowingly induces reliance on its performance of that function." Blahd, 108 P.3d at 1001.

Spirit Air argues that the latter type of special relationship exists here with respect to its claims against Cessna because Cessna self-certified that its de-icing system complied with Federal Aviation Administration regulations. This argument relies primarily on the Duffin case. There, plaintiffs purchased seed potatoes that had been certified by the Idaho Crop Improvement Association ("ICIA"), a private, non-profit corporation that was statutorily authorized as the sole potato-certifier in Idaho. 895 P.2d at 1198, 1201. Potatoes grown from these seed potatoes were found to be diseased and damaged plaintiffs' crop. Id. at 1198. Although the trial court applied the economic loss rule, the Idaho Supreme Court reversed:

> ICIA has held itself out as having expertise in the performance of a
> specialized function; it is the only entity which can certify seed potatoes in
> the state of Idaho. ICIA knows that seed is sold at a higher price based on
> the fact that it is certified. Indeed, it has engaged in a marketing campaign,
> for the benefit of its members, the very purpose of which is to induce

reliance by purchasers on the fact that seed has been certified. Under such circumstances, ICIA occupies a special relationship with those whose reliance it has knowingly induced.

Id. at 1201. However, the court refused to permit tort claims to proceed against the Federal-State Inspection Service, which conducted a shipping point inspection of the potatoes, because there was no evidence "that it has actively sought to induce reliance on the part of purchasers." Id. at 1198, 1201.

We agree with the district court that Spirit Air has failed to create a genuine issue of material fact as to the application of the special relationship exception. Spirit Air argues that Cessna held itself out as having expertise in certifying aircraft for flight in icing conditions. It relies on two pieces of evidence. First, Spirit Air's president submitted an affidavit stating that if the plane had "not been certified for flight into known icing conditions, I would not have purchased the aircraft. I relied on that certification in making my decision to buy the aircraft." Second, Spirit Air points to the aircraft specifications form, which states that the plane is "Certified for Flight in Icing Conditions."

Based on these evidentiary items, Spirit Air contends that we can reasonably infer Cessna marketed itself as an expert in de-icing certification services. We disagree. Cessna certainly informed Spirit Air that its product was certified, but that materially differs from claiming that it was a certification expert. Neither the affidavit nor the specification document says anything about Cessna conducting a certification; each simply notes that the plane was certified. As Cessna persuasively argues, we would not

infer that a car manufacturer held itself out as a vehicle safety certification expert by advertising that its cars complied with federal safety regulations. To do so would permit the special relationship exception to swallow the rule by allowing tort claims against every manufacturer of a regulated product. See Duffin, 895 P.2d at 1201 (describing the special relationship exception as applying in an "extremely limited group of cases"). Because Spirit Air has not presented evidence showing that Cessna held "itself out to the public as having expertise regarding a specialized function," we cannot conclude a special relationship arose between the parties. Blahd, 108 P.3d at 1001.[2]

Further, the special relationship exception applies only when "the relationship between the parties is such that it would be equitable to impose" independent tort duties. Duffin, 895 P.2d at 1201. In Duffin, the certifying body and the purchasing party were not in privity—the plaintiff bought ICIA-certified seed potatoes from a third party. Id. at 1198. As a result, the plaintiffs could not sue ICIA for breach of contract; tort law was the only potential cause of action. Here, Spirit Air can sue the certifying entity, Cessna, for breach of contract or breach of warranty. Spirit Air and Cessna are sophisticated business entities that engaged in an arms-length transaction. We discern no equitable basis to impose additional duties on Cessna.

**B**

In addition to the special relationship rule, Idaho courts permit tort claims

---

[2] Spirit Air also cites to two deposition excerpts as evidence that Cessna held itself out as being an expert de-icing certifier, but neither witness discussed the issue.

normally barred by the economic loss rule when "unique circumstances requir[e] a different allocation of risk." Blahd, 108 P.3d at 1002 (quotation omitted). As appellees point out, however, the Idaho courts have never applied this exception. Id.

Spirit Air primarily relies on Union Oil Co. v. Oppen, 501 F.2d 558 (9th Cir. 1974), in fashioning its argument that the unique circumstances exception applies. Although that case has not been adopted wholesale by the Idaho courts, it was cited in Just's, Inc. v. Arrington Construction Co., 583 P.2d 997 (Idaho 1978), which discussed certain exceptions to the economic loss rule recognized in other jurisdictions. Id. at 1005. In Union Oil, the Ninth Circuit recited several factors California courts consider in determining whether economic losses are recoverable, and Spirit Air urges that those factors be applied here. But the factors cited by Spirit Air are used to determine "whether in a specific case the defendant will be held liable to a third person not in privity." Union Oil Co., 501 F.2d at 566 (emphasis added). They do not apply to cases such as the one at bar.[3] The district court correctly declined to utilize the Union Oil test.

Spirit Air also complains that the district court improperly treated this case in the abstract by refusing to apply the unique circumstances exception on the ground that "[p]urchases of planes are commonplace," rather than looking to the equities involved in this specific case. However, the district court's analysis closely tracks that employed by

---

[3] Several of the Union Oil factors cannot be applied here in a sensible fashion. For example, the first two factors are "the extent to which the transaction was intended to affect the plaintiff, [and] the foreseeability of harm to him." Id. These factors would always weigh in favor of plaintiff when it has a contract with the defendant.

the Idaho courts. In <u>Duffin</u>, the court declined to apply the exception because "the certification of seed potatoes is not a unique circumstance." 895 P.2d at 1200-01 (quotation omitted). Similarly, in <u>Blahd</u>, the court held that the "purchase of a residential house is an everyday occurrence and does not create the type of unique circumstance required to justify a different allocation of risk." 108 P.3d at 1002.

By focusing on the nature of the transaction at issue in determining whether to apply the unique circumstances exception, the Idaho courts remain faithful to the purpose of the economic loss rule. In most circumstances, the "risk of harm to the product itself due to the condition of the product would seem to be a type of risk that the parties to a purchase and sale contract should be allowed to allocate pursuant to the terms of the contract." <u>Tusch Enters. v. Coffin</u>, 740 P.2d 1022, 1035 n.8 (Idaho 1987) (quotation omitted). Although the unique circumstances exception recognizes this may not always be the case, Spirit Air has failed to demonstrate that we should abandon the allocation of risk to which it agreed when it purchased the plane at issue.

We do not discount the notion that the specific equities in a case may favor application of the unique circumstances exception. Nonetheless, Spirit Air simply claims that defendants committed negligence that resulted in economic loss. Far from being unique, this type of claim is precisely that for which the economic loss rule was designed.

## C

Finally, an exception to the economic loss rule exists when the alleged economic loss is "parasitic to an injury to person or property." <u>Duffin</u>, 895 P.2d at 1200. The

Idaho Supreme Court described this exception as follows:

> [C]ase[s] in which the plaintiff seeks recovery for purely economic losses
> without alleging any attending personal injury or property damage must be
> distinguished from cases involving the recovery of economic losses which
> are parasitic to an injury to person or property. It is well established that in
> the latter case economic losses are recoverable in a negligence action.
> Restatement (Second) of Torts, § 766C, comment b, and illustration 5
> (Tent. Draft No. 23, 1977).

Just's, 583 P.2d at 1004 n.1 (additional citations omitted).

Spirit Air claims it fits within this exception because the pilot and a passenger

were killed in the crash.[4] But Spirit Air did not suffer these personal injuries. Just's

would seem to require that the "plaintiff . . . allege[] any attending personal injury or

property damage." Id. (emphasis added). Courts in other jurisdictions have been more

explicit. See Turbomeca, S.A. v. French Aircraft Agency, Inc., 913 So. 2d 714, 716 (Fla.

Dist. Ct. App. 2005) ("Physical injury to third parties is insufficient to satisfy this

[parasitic] economic loss doctrine exception."); Am. Drug Stores, Inc. v. A T & T Techs.,

Inc., 583 N.E.2d 694, 696 (Ill. Ct. App. 1991) (rejecting argument "that as long as some

person was injured or someone's property was damaged by a sudden, calamitous event,

anyone else sustaining damage because of the event may seek recovery in tort, even if

---

[4] Spirit Air also argues that because the plane and the after-market de-icing
equipment were purchased separately, destruction of the plane constitutes property
damage rather than economic loss with respect to the claims against Goodrich and thus
the claims against Cessna are parasitic on that property damage. However, Spirit Air did
not advance this argument before the district court. Accordingly, Spirit Air has waived
this contention and we will not consider it on appeal. See Cummings v. Norton, 393 F.3d
1186, 1190 (10th Cir. 2005) (arguments generally may not be raised for the first time on
appeal).

those damages are strictly economic").

The Restatement illustration cited in Just's is consistent with a rule requiring personal injury or property damage to the plaintiff:

> A is engaged in the business of producing and selling mushrooms. Under a contract with B Power Company, he is supplied with electric power to keep his mushroom cellars at a uniform temperature. C, installing a pole for a telephone line near the power line of B Company, negligently allows the pole to fall on the power line and break it. Before the line can be repaired, A's mushrooms are killed by freezing. In an action for harm to the mushrooms, C is subject to liability to A for their value, and also for pecuniary loss to A's business, if the loss is proved with reasonable certainty.

Restatement (Second) of Torts, § 766C, comment b, illustration 5. The Restatement (Third) of Torts, Products Liability, which was not yet published when Just's was decided, similarly requires loss to "the plaintiff's person" or "the plaintiff's property other than the defective product itself." Id. § 21(a), (c).

In light of these authorities, we affirm the district court's conclusion that Idaho's parasitic loss exception does not apply when a third party suffers the host injury to person or property upon which the economic loss is parasitic.

### III

Spirit Air moved to certify to the Idaho Supreme Court "the issues raised in Appellants' brief." This court has discretion as to whether to certify a question to a state court. Oliveros v. Mitchell, 449 F.3d 1091, 1093 (10th Cir. 2006). Certification is appropriate "where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without

-11-

further guidance." Pino v. United States, 507 F.3d 1233, 1236 (10th Cir. 2007). However, "we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." Id. We generally will not certify a question if the moving party seeks certification only after losing in district court. Enfield ex rel. Enfield v. A.B. Chance Co., 228 F.3d 1245, 1255 (10th Cir. 2000).

Certification would be inappropriate here for three reasons. First, Spirit Air did not seek to certify until after an adverse decision below. See id. Second, Spirit Air does not provide a legal question for certification; it simply claims that the Idaho courts have been unclear as to when the "unique circumstances" exception applies and with respect to the meaning of "subject of the transaction." Third, the issues cited by Spirit Air in its motion for certification are neither determinative nor "sufficiently novel that we feel uncomfortable attempting to decide [them] without further guidance." Pino, 507 F.3d at 1236.

## IV

The judgment of the district court is **AFFIRMED**. Spirit Air's motion for certification of questions of state law is **DENIED**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

-12-