## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 49176

BRUNOBUILT, INC., an Idaho corporation, )
)
   Plaintiff-Appellant, )
)
v. )
)
BRIGGS ENGINEERING, INC., an Idaho )
corporation; DEAN W. BRIGGS, )
)
   Defendants-Respondents, )
)
and )
)
MATERIALS TESTING & INSPECTION, )
LLC, an Idaho limited liability company; )
KEVIN L. SCHROEDER, CHARLES E. )
KAISER, ELIZABETH BROWN, DAVID O. )
CRAM, ERSTAD ARCHITECTS, PA, an )
Idaho professional service corporation; )
ANDREW C. ERSTAD, CHERYL PEARSE, )
TREASURE VALLEY ENGINEERS, INC., )
an Idaho corporation; MATRIX )
ENGINEERING, INC., an Idaho corporation; )
DOUGLAS L. UNGER, KLEINFELDER, )
INC., a California corporation; and G. )
ALEXANDER RUSH, )
)
   Defendants. )

Boise, January 2023 Term

Opinion filed: March 7, 2023

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven J. Hippler, District Judge.

The judgment of the district court is <u>affirmed</u>.

McConnell Wagner Sykes & Stacey, PLLC, Boise, for Appellant. Richard Lee Stacey, Jr. argued.

Cummings Law Offices, Boise, for Respondents. Richard Cummings argued.

---

MOELLER, Justice.

1

This appeal stems from a professional malpractice lawsuit following a landslide in the Boise foothills. BrunoBuilt, Inc., was constructing a custom home on a vacant lot in 2016 when a landslide occurred beneath the Terra Nativa subdivision. Following damage to the lot, BrunoBuilt filed a professional negligence suit against numerous engineers and engineering firms involved in the construction of the subdivision, arguing that they failed to identify preexisting landslide conditions and other geological circumstances that made residential development unsafe at this site.

Over two years later, in the fall of 2018, BrunoBuilt discovered additional damage to the finished custom home itself. It then brought suit against additional defendants, including Briggs Engineering, Inc., and Erstad Architects.[1] Briggs Engineering filed a motion for summary judgment, which the district court granted. The court concluded that BrunoBuilt's action was time barred by the two-year statute of limitations under Idaho Code section 5-219(4). BrunoBuilt appealed this decision. It argued that the malpractice claim did not begin to accrue until there was damage to the custom home, rather than just the land. We disagree with BrunoBuilt's analysis and affirm the district court that BrunoBuilt's claim is time barred.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns damage to a residential construction project in the Terra Nativa subdivision caused by a landslide in the foothills northeast of Boise, Idaho. Work on this subdivision began back in 1998, with multiple engineering firms employed over the years to complete the various phases of development amidst market fluctuations and delays. One engineering firm, Strata, Inc., completed a geotechnical engineering report of the area in 2003. This report was independently reviewed by Kleinfelder, Inc., an engineering firm hired by the City of Boise, to evaluate Strata's compliance with the City of Boise Hillside Development Manual and its engineering requirements to ensure safe residential development. Boise approved the plats and, in 2004, the Terra Nativa property was annexed into the City of Boise.

In 2014, Amy and William Dempsey purchased a vacant property lot ("Lot 16") in Terra Nativa. At the time the Dempseys acquired the property, it was bare land with no structures on it. The Dempseys first hired Erstad Architects, PA,[2] to design their home. As part of the property's

---

[1] BrunoBuilt's lawsuit against the Erstad Architects is the subject of a companion appeal.

[2] At all relevant times to this appeal, Erstad Architects was organized as *Erstad Architects, PA*. However, Erstad Architects, PA, filed a statement of conversion and converted to a general business corporation (*Erstad Architects,*

2

development, Erstad entered into a contract with Dean Briggs, of Briggs Engineering, Inc., (collectively "Briggs Engineering") to perform civil engineering services, including the preparation of a site grading and drainage plan as well as an erosion control plan for Lot 16. "The scope of work involved surface soils and water," but it did not involve geotechnical services. In July 2015, the Dempseys separately contracted with BrunoBuilt, Inc., to build a custom home designed by Erstad. Pursuant to a construction agreement, the Dempseys transferred ownership of Lot 16 to BrunoBuilt, via a quitclaim deed, as security for their construction contract with the agreement to pay for the home upon its completion. Construction on the home commenced in 2015 and continued into 2016.

In February 2016, the lands beneath the Terra Nativa subdivision began to slide. Several homes within the subdivision were damaged by earth movement. At this time, the Dempseys' home was practically complete. In an affidavit that Mr. Bruno later submitted in connection with this litigation, he stated that "[i]n anticipation of securing a certificate of occupancy, [the] final heating, final plumbing, final electrical, and final building inspections were conducted in and around February and March of 2016." Although the Dempseys' home had passed all final building inspections, cracks in the soil began appearing in the yard. By April, a landslide scarp[3] became visible and certain utilities had to be relocated. Robert Bruno's affidavit detailed the damages from the landslide:

> 9. As a result of the landslide, utility, highway district, and fire department services were all terminated, and the City of Boise withheld their certificate of occupancy. Portions of the utility lines were physically damaged and/or severed by the landslide.
>
> 10. BrunoBuilt immediately began working with the utility entities on solutions to resume services to the Dempsey Lot. The utility lines have to be rerouted to the Dempsey Home before the utilities can be turned back on. To restore the utilities, BrunoBuilt will be required to perform or pay for the majority of work for rerouting the utility lines and services, including buying a transformer, installing the conduit, installing 500 feet of water line, and 500 feet of sewer line, as well as all the trenching, backfilling and concrete replacement. Based on requirements from the Fire Department, BrunoBuilt will also be required to widen the driveway to 20 feet

*Inc.*) on November 30, 2021. Throughout this appeal, "Erstad Architects, PA" or "Erstad Architects" is used to refer to the general corporation that is now organized as Erstad Architects, Inc.

[3] A scarp is "a steep (nearly vertical) region of exposed soil and rock at the head of the landslide" where the movement of adjacent land exposes part of the subsurface. *Landslide Features*, Kansas Geological Survey: Public Outreach https://www.kgs.ku.edu/Publications/pic13/pic13_2.html (last visited February 6, 2023).

wide to accommodate a fire truck. The City of Boise has also required a retaining wall be installed in order to retain topsoil.

11. To this date, BrunoBuilt still has not been able to secure a certificate of occupancy for the Dempsey Home, and has had to incur increased costs based on the demands of the City for the certification of occupancy.

BrunoBuilt had to build a retaining wall, grade the land, remedy the surface cracking in the yard, buy a transformer, reroute utilities, install sewer and water lines, and complete "all the trenching, backfilling and concrete replacement" required to restore service to the Dempsey home.[4] BrunoBuilt also hired a surveyor at this time to determine whether the finished home had been affected by the landslide, who confirmed that he did not detect movement of the home at that time. After the City of Boise withheld issuing the certificate of occupancy, the Dempseys "refused to pay" under the construction agreement and BrunoBuilt retained ownership of the home and lot.

After BrunoBuilt could not obtain a certificate of occupancy from the city, litigation ensued. On December 19, 2016, BrunoBuilt filed a complaint of professional negligence against numerous engineers and engineering firms involved in the construction of the Terra Nativa subdivision. Neither Briggs Engineering nor Erstad were named as defendants at that time. Some of BrunoBuilt's initial claims were later found by the district court to be time barred by the statute of limitations and of repose. The district court also determined that some of these claims were precluded because they were solely for economic loss.

In July of 2018, still in the midst of litigation, BrunoBuilt became aware of structural damage to the custom home on Lot 16 caused by the landslide. A civil engineer, Patrick Shires, inspected the home and discovered "cracks in the driveway, front porch and stucco, cracks in the foundation and nail heads that had popped out of the drywall." On September 21, 2018, BrunoBuilt filed an amended complaint, naming Briggs Engineering as a defendant, as well as Erstad Architects. The amended complaint averred that Briggs Engineering failed to identify preexisting landslide conditions and other circumstances that made construction of the Dempseys' home unsafe.

Briggs Engineering filed a motion for summary judgment, arguing that the malpractice claims were barred by the statute of limitations under Idaho Code section 5-219(4) because landslide damages to the property first occurred more than two years prior to BrunoBuilt's

---

[4] BrunoBuilt claimed potential damages for even more. In its initial notice of tort claim, BrunoBuilt estimated $50,000 in costs to reroute the utilities and stabilize the Dempsey home through the installation of helical piers. It estimated another $850,000 for the lost sale of the house if a final certificate of occupancy was refused by the City of Boise.

amended complaint. BrunoBuilt responded by arguing that the statute of limitations was inapplicable because the proof of actual injury had not manifested until July 2018, when damage to the constructed home was observable. BrunoBuilt also filed a Rule 56(d) motion for relief seeking additional time to complete discovery and respond to Briggs Engineering's motion.

The district court held a hearing on these motions on June 19, 2019. It granted Briggs Engineering's motion for summary judgment and denied BrunoBuilt's motion for a continuance. The district court concluded that BrunoBuilt's suit was time barred by the two-year statute of limitations under Idaho Code section 5-219(4) because BrunoBuilt was aware of landslide damages to Lot 16 more than two years prior to filing its complaint. The court explained:

> It is undisputed that BrunoBuilt was aware of actual damage to the Lot as early as April of 2016. However, BrunoBuilt did not assert a claim against Briggs until September 21, 2018, more than two years later. While, in opposing summary judgment, BrunoBuilt attempts to draw a line between damage to the Lot and damage to the home, it is an inconsequential distinction. Section 5-219(4) of the Idaho Code specifically states that the limitation period "shall not be extended by reason of any continuing consequences or damages resulting" from the alleged malpractice. The damage to the home was a continuance of damage that already revealed itself in the Lot. Further, BrunoBuilt's argument disregards the fact that, once built, the home and the lot were an integrated whole. *Blahd*, 141 Idaho at 301, 108 P.3d 996, 1001. Together, they constitute BrunoBuilt's real property. I.C. § 55-101 (defining "real property" as that which is affixed or appurtenant to land.) Because BrunoBuilt failed to bring suit against Briggs within two years of being made aware of earth movement damage to its real property, the claim is time-barred.

The district court then dismissed BrunoBuilt's action against Briggs Engineering with prejudice. BrunoBuilt timely appealed.

## II. STANDARD OF REVIEW

When this Court reviews a trial court's ruling on a motion for summary judgment, it applies the same standard used by the trial court originally ruling on the motion. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017). Pursuant to the Idaho Rules of Civil Procedure, a court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "In making this determination, all allegations of fact in the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion." *City of Kellogg v. Mission Mountain Ints., Co.*, 135 Idaho 239, 243, 16 P.3d 915, 919 (2000). "If the evidence reveals no disputed issues of material fact, what remains is a question of

5

law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428, 398 P.3d at 161. This Court also exercises free review over legal issues related to statutes of limitation. *McCabe v. Craven*, 145 Idaho 954, 957, 188 P.3d 896, 899 (2008).

### III. ANALYSIS

#### A. BrunoBuilt's action against Briggs Engineering is barred by the statute of limitations.

BrunoBuilt asks this Court to reverse the district court's order granting summary judgment to Briggs. BrunoBuilt argues that the statute of limitations "could not start to accrue until there was ascertainable damage recoverable in the malpractice action at bar," and that it "did not have recoverable damages against the Briggs Defendants until the landslide damaged separate property that was not the subject of underlying transaction." Based on this argument, the analysis of Briggs Engineering's statute of limitations defense has become entangled with the economic loss rule. BrunoBuilt relies on a unique application of the economic loss rule to argue that the agreement to build a custom home concerned a "separate property" and was a separate transaction from Lot 16 itself; thus, the 2018 damages to the *house* are recoverable even if the earlier 2016 damages to *Lot 16* were unrecoverable as purely economic losses. In response, Briggs Engineering argues that the statute of limitations clearly bars BrunoBuilt's claims and that the subject of the transaction was the construction of a residence—"[t]here was never any separate agreement to provide services for an unimproved lot." Briggs Engineering asserts it was contracted by Erstad "to provide specified engineering services that were necessary to obtain a building permit [for a home]," and "[t]here was never any separate agreement to provide services for an unimproved lot."

Importantly, the district court never fully addressed the economic loss rule as it concerns BrunoBuilt and Briggs Engineering. While economic loss was argued and considered with other defendants in the BrunoBuilt litigation (including Erstad), the district court's decision to grant Briggs Engineering's motion for summary judgment appears to be solely based on Idaho Code section 5-219(4)'s time bar to BrunoBuilt's claims. The district court likewise concluded that Lot 16 and the custom home "were an integrated whole," and that "damage to the home was a continuance of damage that already revealed itself in the Lot." We agree with the district court's conclusions.

Claims of professional negligence are subject to the two-year statute of limitations under Idaho Code section 5-219(4), which states:

> An action to recover damages for professional malpractice . . . shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and

6

the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer.

I.C. § 5-219(4). A cause of action under this provision must commence within "two (2) years following the occurrence, act or omission complained of." *Id.* Thus, "[t]he plain language of Idaho Code section 5-219 provides that a legal malpractice claim begins to accrue at the time the negligent act or omission occurs." *Walsh v. Swapp L., PLLC*, 166 Idaho 629, 636, 462 P.3d 607, 614 (2020). Or, as this Court has interpreted, when "some damage" has occurred. *Id.*; *City of McCall v. Buxton*, 146 Idaho 656, 659, 201 P.3d 629, 632 (2009).

> The reason for the "some damage" rule is that in order to recover under a theory of negligence, the plaintiff must prove actual damage. Until some damage occurs, a cause of action for professional malpractice does not accrue. Therefore, some damage is required because it would be nonsensical to hold that a cause of action is barred by the statute of limitations before that cause of action even accrues.

*Buxton*, 146 Idaho at 659, 201 P.3d at 632 (internal quotation marks and citations omitted).

Here, it is undisputed that damages to Lot 16 were apparent and known to BrunoBuilt by April 2016 when a landslide scarp and cracking in the soil became visible on the property. Importantly, the utilities were also "physically damaged and/or severed by the landslide." BrunoBuilt commenced rerouting the lines, "as well as all the trenching, backfilling and concrete replacement" required for their relocation and safety concerns. The City of Boise ultimately refused to issue a certificate of occupancy. BrunoBuilt discovered additional damages in July 2018, this time to the constructed home itself. A civil engineer discovered cracks in the driveway, front porch, stucco, and foundation, as well as nail heads that had popped out of the drywall. Because the amended complaint against Briggs Engineering was filed in September 2018, the cause of action is only timely if we conclude that the two-year statute of limitations began to accrue when BrunoBuilt discovered the later damage to the constructed home, rather than when the original damage to the yard and utilities crossing the lot occurred. BrunoBuilt argues this distinction is key to the case because the damages to the house constitute separate, recoverable property damages under the economic loss rule. Thus, this Court's determination on the timeliness of BrunoBuilt's action will turn on whether the house was a "separate property," not subject to the underlying transaction regarding the home.

We cannot overemphasize the unique posture of this case. The economic loss rule is a long-established principle of Idaho law, first considered and adopted in *Clark v. Int'l Harvester Co.*, 99

Idaho 326, 334, 581 P.2d 784, 792 (1978). It is a doctrine of judicial construct that acts as a boundary between tort and contract law. *Id.* at 333–34, 581 P.2d at 791–92. *See also* Dale D. Goble, ALL ALONG THE WATCHTOWER: ECONOMIC LOSS IN TORT (THE IDAHO CASE LAW), 34 Idaho L. Rev. 225, 227–28 (1998). Traditionally, the economic loss rule is a defense to tort recovery where damages result only in economic loss, rather than physical injury or property damage. *See, e.g.*, *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 299, 108 P.3d 996, 999 (2005) (the defendants raised the economic loss rule in defense against the plaintiffs' negligence claim). BrunoBuilt has crafted a novel argument that turns the shield provided by the economic loss rule to prevent recovery of contract-based damages in a tort action, into a sword in the hope that it can circumvent the statute of limitations.

Under our jurisprudence, the economic loss rule prohibits the "recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another." *Blahd*, 141 Idaho at 300, 108 P.3d at 1000. These economic losses are the "costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975) (emphasis added). Whereas "property damage," which is recoverable, "encompasses damage to property other than that which is the subject of the transaction." *Brian & Christie, Inc. v. Leishman Elec., Inc.*, 150 Idaho 22, 26, 244 P.3d 166, 170 (2010) (quoting *Salmon Rivers*, 97 Idaho at 351, 544 P.2d at 309). In interpreting "subject of the transaction," this Court's pattern of cases "has implicitly defined the 'subject of the transaction' by the subject matter of the *contract*." *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 791, 215 P.3d 505, 511 (2009) (emphasis added).[5]

For example, in *Blahd v. Richard B. Smith, Inc.*, this Court analyzed the economic loss rule as pertaining to property and lot damages. 141 Idaho at 300, 108 P.3d at 1000. In *Blahd*, the plaintiffs discovered cracks in their new home that were caused by thirty feet of improperly compacted fill dirt settling. *Id.* at 299, 108 P.3d at 999. The Blahds filed a professional negligence action against the engineering firms and developer of the subdivision, but the district court

---

[5] This Court had previously established in *Blahd* that "transaction" meant the "subject of the lawsuit." *Blahd*, 141 Idaho at 300, 108 P.3d at 1000. We abrogated this interpretation in *Aardema* because it was overly broad. "[I]f the subject of the transaction is defined as the subject of the lawsuit essentially every claim would be barred by the economic loss rule. Instead, we read . . . *Blahd* to mean that the *underlying contract that is the subject of the lawsuit* is the subject of the transaction." *Aardema*, 147 Idaho at 791 n.2, 215 P.3d at 511 n.2 (emphasis added).

ultimately awarded summary judgment to the defendants, determining that the Blahds' various claims were either barred by the economic loss rule or the statute of limitations. The Blahds appealed, arguing that "any damage to the house [was] property damage and that the subject of the transaction was the improperly filled and compacted lot, not the house that was later constructed on the lot." *Id.* at 299–300, 108 P.3d at 999–1000. This Court disagreed. It determined that the Blahds' house and lot were purchased as an "integrated whole" and, thus, "the subject of the transaction in [that] case [was] both the lot and the house." *Id.* at 301, 108 P.3d at 1001.

Likewise, in *Tusch Enterprises*, a seller hired a contractor to level a foothill in preparation to build duplex residences on the property. *Tusch Enterprises v. Coffin*, 113 Idaho 37, 38, 740 P.2d 1022, 1023 (1987). A separate contractor was hired to build the residences, and the seller later sold the duplexes. The buyer soon discovered damage to the duplexes because of a defective foundation, which resulted in a lawsuit against both the seller and contractor for negligence. This Court applied the economic loss rule to bar the negligence claims because the damage to the duplex caused by a defective foundation was purely economic. *Id.* at 38–40, 740 P.2d at 1023–25. In a separate case, this Court also explained that "the duplex itself, rather than its construction, [was] the subject of the transaction." *Ramerth v. Hart*, 133 Idaho 194, 197, 983 P.2d 848, 851 (1999).

BrunoBuilt argues that the separate business transactions of this case severed the lot and the home for purposes of the economic loss rule, making the damages to the house recoverable property damage because it was not "subject to the underlying transaction." In its words, BrunoBuilt claims it did not "acquire [Lot 16] and the Custom Home as part of a single transaction, and the significance of that fact cannot be overstated. BrunoBuilt first acquired legal title to the View Lot and then later constructed the Custom Home on said Lot."

Initially, we note that the quitclaim deed here is an unusual and distinguishing fact in this case. Here, unlike in *Blahd* and *Tusch*, the land was purchased when vacant by third parties and then quitclaimed as security to a contractor prior to any residence or structure being built upon it. However, BrunoBuilt has disregarded the fact that Lot 16, and the custom home to be constructed, were the subject of a *single* contract and transaction—just as the land and home were both damaged by the same landslide and its continuing effects. The construction agreement between BrunoBuilt and the Dempseys transferred ownership of Lot 16 to BrunoBuilt as security for a construction contract to build the Dempseys a home *on* the vacant lot. While the home was not yet constructed at the moment BrunoBuilt acquired Lot 16, the purpose of the construction agreement and property

9

transfer was to build that custom home. The agreement also provided that the Dempseys would buy back the property from BrunoBuilt upon completion of the house, meaning they would buy back the entire premises—both the house and the lot. Thus, the house and lot were an integrated whole, both part and parcel of one contract between the parties. Similarly, Briggs Engineering's involvement with the property was to complete civil engineering work in developing and preparing Lot 16 for the construction of the Dempseys' residence upon it. There is no dispute that the utilities damaged by the landslide in 2016 were primarily intended to benefit the home, not just the lot.

Although not fully acknowledged by BrunoBuilt in its briefing, the record shows that, at the time of the first landslide, the house was almost complete. Thus, the initial damages in 2016 did not occur to a vacant lot. The land shifted beneath a nearly-finished home that was undergoing final inspections. Importantly, these damages were not limited to the lot and yard, as BrunoBuilt contends. Mr. Bruno's own affidavit avers that the utilities connecting to the home were *damaged* and *severed*. Utility lines had to be rerouted, trenches dug, concrete replaced—all in addition to the cracked soil and landslide scarp running across the front yard. Therefore, we cannot agree with BrunoBuilt's view that the home and land were separate for assessing damages through the economic loss rule. Instead, we find *Blahd* and *Tusch* to be controlling. Because the house and lot were both the subject of the underlying transaction, there were no recoverable property damages to a "property other than that which is the subject of the transaction." *Brian & Christie, Inc.*, 150 Idaho at 26, 244 P.3d at 170.

Examining the evidence in the light most favorable to BrunoBuilt, we conclude that Briggs Engineering was entitled to summary judgment as a matter of law. The subject of the transaction here was both the house and the land it would be built upon, and the entire property was damaged in 2016 by the landslide. The district court correctly determined that this is when "some damage" to the property occurred, making April 2016 the accrual date for purposes of the statute of limitations. The timeline does not shift under BrunoBuilt's novel economic loss argument. Therefore, BrunoBuilt's compensable claims in tort should have been brought within the two-year statute of limitations period.

Because the record is clear the claims in this case were filed well after the statute of limitations had lapsed, we affirm the district court's conclusion that BrunoBuilt's action against Briggs Engineering is barred by the statute of limitations.

**B. Briggs Engineering is not entitled to attorney fees on appeal.**

Briggs Engineering cites two statutory provisions as a basis for attorney fees. It first argues that it is entitled to attorney fees under Idaho Code section 12-120(3), which provides a prevailing party reasonable attorney fees in civil actions where "the commercial transaction comprises the gravamen of the lawsuit." *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 141, 357 P.3d 863, 866 (2015) (quoting *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990)). "There are two stages of analysis to determine whether a prevailing party could avail itself of I.C. § 12-120(3): (1) there must be a commercial transaction that is integral to the claim; and (2) the commercial transaction must be the basis upon which recovery is sought." *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, 170 Idaho 649, 663, 516 P.3d 73, 87 (2022) (citation and internal quotation marks omitted). Additionally, "[t]here must be a commercial transaction between the parties for attorney fees to be awarded." *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 471, 36 P.3d 218, 223 (2001).

Section 12-120(3) does not apply because a commercial transaction is not the gravamen of BrunoBuilt's claims. First, this is a tort action. BrunoBuilt brought a cause of action for professional negligence and seeks property damages. As a tort action, the construction agreement between BrunoBuilt and the Dempseys is not integral to the claim—it is only tangentially related. Second, and closely related, is that there was no commercial transaction between BrunoBuilt and Briggs Engineering that forms the basis for recovery in this case. Erstad Architects contracted with Briggs Engineering to complete civil engineering work on the property, not BrunoBuilt. BrunoBuilt likewise did not contract with Erstad (who designed the home). Erstad's transactional relationship was only with the Dempseys, as was BrunoBuilt's. In sum, at its heart, this case bears no resemblance to the type of transactions we have held to be governed by section 12-120(c).

Briggs Engineering also seeks attorney fees under Idaho Code section 12-121, which allows a court to "award reasonable attorney's fees to the prevailing party" when "the case was brought, pursued or defended frivolously, unreasonably or without foundation." However, we have consistently held that a "mere citation of Idaho Code § 12–121, . . . without providing any argument, is insufficient for an award of attorney fees on appeal." *Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010). Aside from citing section 12-121, Briggs Engineering did not provide any arguments explaining how BrunoBuilt's appeal was "brought, pursued or defended frivolously, unreasonably or without foundation," or how it is entitled to an award under this section. It is not for this Court to conduct a section 12-121 analysis on behalf of a party seeking

fees in the first instance. Accordingly, Briggs Engineering is not entitled to an award of fees despite being the prevailing party on appeal.

## IV. CONCLUSION

We affirm the district court's award of summary judgment to Briggs Engineering. Costs are awarded to Briggs Engineering pursuant to Idaho Appellate Rule 40(a) as a matter of course.

Chief Justice BEVAN, Justices BRODY, ZAHN and Justice Pro Tem BURDICK **CONCUR.**