## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 35929-2008

| | | |
|---|---|---|
| BRIAN AND CHRISTIE, INC., an Idaho corporation, dba Taco Time, an assumed business name, | ) ) ) | Boise, September 2010 Term |
| | ) | 2010 Opinion No. 113 |
| Plaintiff-Appellant, | ) ) | Filed: November 24, 2010 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| LEISHMAN ELECTRIC, INC., an Idaho corporation, | ) ) ) | |
| Defendant-Respondent, | ) ) | |
| and | ) ) | |
| JOHN DOES 1-10, | ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Madison County. The Hon. Brent J. Moss, District Judge.

The judgment of the district court is <u>vacated</u>.

Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, for appellant. John R. Goodell argued.

Cooper & Larsen, Chartered, Pocatello, for respondent. Gary L. Cooper argued.

---

EISMANN, Chief Justice.

This is an appeal from a judgment dismissing a claim for negligence in performing electrical work that caused a fire resulting in substantial damage to a restaurant and its contents. The district court dismissed this action on the ground that the claim was for purely economic damages and was barred by the economic loss rule. We vacate the judgment and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Brian and Christie, Inc., d/b/a Taco Time, (Taco Time) owns and operates a Taco Time restaurant in Rexburg. In 1998, it engaged a general contractor to remodel the restaurant. The general contractor hired Leishman Electric, Inc., (Subcontractor) to perform the electrical work.

Taco Time purchased two used neon signs, transformers, and wiring from a third party and contracted with a sign company to install them. That company repaired and rewired one of the signs and installed both of them, including the transformers, on the restaurant building. It did not properly ground one of the signs, and one of the transformers lacked secondary ground fault protection in violation of the National Electric Code. The sign company did not connect the signs to electrical power.

After the signs were installed, Subcontractor connected them to electrical power. Prior to doing so, it did not check the wiring performed by the sign company nor did it check to determine whether the transformers complied with the Electric Code. After Subcontractor connected the signs and transformers to electrical power, they caused a fire that resulted in substantial damage to the building and its contents.

Taco Time filed a lawsuit against the sign company and Subcontractor. It amended its complaint to drop Subcontractor as a party and ultimately settled the lawsuit against the sign company. It then filed this lawsuit against Subcontractor on October 2, 2006.

On June 5, 2007, Subcontractor moved for summary judgment on the ground that the economic loss rule barred recovery against it on a negligence cause of action. The district court granted the motion, and Taco Time filed a motion for reconsideration. Several days later, it filed a motion to amend its complaint. The district court denied both motions and entered a judgment dismissing the complaint. Taco Time timely appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in holding that Taco Time's cause of action was barred by the economic loss rule?

B. Did the district court err in denying Taco Time's motion to amend its complaint?

C. Is Taco Time entitled to recover prejudgment interest?

D. Is Taco Time entitled to recover attorney fees on appeal?

2

## III. ANALYSIS

**A. Did the District Court Err in Holding that Taco Time's Cause of Action Was Barred by the Economic Loss Rule?**

Taco Time's complaint alleges a cause of action against Subcontractor for the negligent performance of electrical work.[1] Taco Time contends that Subcontractor connected the neon signs and transformers to electrical power without first ascertaining that the signs were properly grounded and that the transformers complied with the National Electric Code; that such omission constituted negligence; and that such negligence caused a fire that damaged the restaurant and its contents. The district court held that Taco Time's cause of action was barred by the economic loss rule.

We first addressed the economic loss rule in *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978). We noted, "The economic expectations of parties have not traditionally been protected by the law concerning unintentional torts." *Id*. at 335, 581 P.2d at 793. In explaining the considerations underlying the distinction between the recovery of damages in tort for physical injuries to person or property and the recovery of purely economic loss for breach of warranty or contract, we quoted from *Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965), as follows:

> He [a manufacturer] can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.

*Clark* was a products liability case. The plaintiff contended that the tractor he had purchased was negligently designed, resulting in breakdowns and a lack of power that caused him to lose profits in his custom farming operation. In addressing the manufacturer's duty, we explained:

---

[1] The complaint alleges negligence and negligence per se, but the latter is simply one manner of proving negligence. It is not a separate cause of action. "Negligence per se is simply one manner of proving a common law negligence claim." *Steed v. Grand Teton Council of the Boy Scouts of America, Inc.*, 144 Idaho 848, 853, 172 P.3d 1123, 1128 (2007).

The law of negligence requires the defendant to exercise due care to build a tractor that does not harm person or property. If the defendant fails to exercise such due care it is of course liable for the resulting injury to person or property as well as other losses which naturally follow from that injury. However, the law of negligence does not impose on International Harvester a duty to build a tractor that plows fast enough and breaks down infrequently enough for Clark to make a profit in his custom farming business. This is not to say that such a duty could not arise by a warranty express or implied by agreement of the parties or by representations of the defendant, but the law of negligence imposes no such duty.

99 Idaho at 336, 581 P.2d at 794.

In *Clark*, the negligence in designing the tractor that the plaintiff had purchased did not cause any injury to person or property. It simply caused the tractor not to perform properly in plaintiff's business. The resulting purely economic losses incurred by the plaintiff were not recoverable under a negligence cause of action because the manufacturer had no duty to design and manufacture a tractor that would plow fast enough and break down infrequently enough for the plaintiff to make a profit in his custom farming business. In essence, manufacturing an inferior product does not breach any duty imposed under negligence law where the product does not cause harm to person or property.

"The economic loss rule is a judicially created doctrine of modern products liability law." 63B Am. Jur. 2d *Products Liability* § 1794 (2010). However, in *Ramerth v. Hart*, 133 Idaho 194, 197, 983 P.2d 848, 851 (1999), we stated, "The economic loss rule applies to negligence cases in general; its application is not restricted to products liability cases."

In *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975), we provided a definition of economic loss. The issue in *Salmon Rivers* was whether one could recover damages against a manufacturer for breach of an implied warranty in the absence of privity of contract. While deciding that issue, we stated that the difference between property damage and economic loss was: "Property damage encompasses damage to property other than that which is the subject of the transaction. Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Id*. at 351, 544 P.2d at 309.

We have since applied that definition to cases involving the purchase of defective personal property and real property. *See Tusch Enterprises v. Coffin*, 113 Idaho 37, 41, 740 P.2d

4

1022, 1026 (1987) (purchase of three defective duplexes); *Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1995) (purchase of defective seed potatoes); *Ramerth v. Hart*, 133 Idaho 194, 196, 983 P.2d 848, 850 (1999) (purchase of a defective airplane); *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 300, 108 P.3d 996, 1000 (2005) (purchase of a defective house); *Aardema v. U.S. Dairy Systems, Inc.*, 147 Idaho 785, 790, 215 P.3d 505, 510 (2009) (purchase of an allegedly defective milking system). In reaching its decision, the district court used this same definition, even though Taco Time's claim against Subcontractor did not involve the purchase of defective property. The district court's attempt to apply this formulation of the rule to a case involving the rendition of services illustrates why it does not apply to such cases.

First, the *Salmon Rivers* definition states, "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction . . . ." 97 Idaho at 351, 544 P.2d at 309. In applying that definition to this case, the district court held that "the subject of the transaction with which [Subcontractor] was involved was the remodel project" and that it was "the restaurant/building, not the services provided via remodeling, that was the subject of the transaction."[2] In doing so, it misquoted the *Salmon Rivers* definition of economic loss.

Correctly quoted, that definition states, "Economic loss includes costs of repair and replacement of *defective* property which is the subject of the transaction . . . ." *Id.* (emphasis added). In its analysis, the district court omitted the word "defective." Taco Time did not contend that it suffered economic loss because Subcontractor sold it a defective restaurant. The restaurant was not defective property. It did not spontaneously combust. Rather, Taco Time's claim is that Subcontractor's negligence in connecting the signs to electrical power caused a fire

---

[2] The district court wrote in its decision granting summary judgment, "In this Court's view, the subject of the transaction with which [Subcontractor] was involved was the remodel project including, of necessity, the electrical work to supply power to operate the signs acquired as part of that project." When denying reconsideration, the court further explained its analysis as follows:

> The various components of the remodeling, including electrical rewiring, installation of the signs, and other building improvements were wholly integrated into the building, not separate or apart from it. These improvements were of necessity integrated with the existing building to better facilitate the purpose for which the building was used, a restaurant.
> It is the restaurant/building, not the services provided via remodeling, that was the subject of the transaction; and it was the building, its contents, and the profits derived from the building's use that were damaged by the fire. . . . .

5

that extensively damaged the restaurant and its contents. In this case, there was no defective property which was the subject of the transaction.[3]

Second, the district court misunderstood what economic loss is. In its decision denying reconsideration, it wrote, "All of [Taco Time's] damage claims arise from restaurant property damaged by the fire, and such damages constitutes economic loss." It therefore held that Taco Time could not recover for damage to "the building, its contents, and the profits derived from the building's use that were damaged by the fire." Economic loss is not simply damages that can be measured monetarily. "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Salmon Rivers Sportsman Camps, Inc. v. Cessna Air, Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975). It includes costs to repair and replace the "*defective* property which is the subject of the transaction." As discussed above, the restaurant and its contents were not defective property.

In *Oppenheimer Industries, Inc. v. Johnson Cattle Co.*, Inc., 112 Idaho 423, 426, 732 P.2d 661, 664 (1986), we rejected the contention that the loss of cattle due to the negligence of the deputy brand inspector was merely economic loss. In doing so, we stated, "It is also black-letter law that a cause of action in negligence is available for one whose chattel is lost or destroyed through the negligence of another." *Id*. The damage to Taco Time's restaurant and its contents was no more economic loss than was the loss of the cattle in *Oppenheimer*.

The district court's analysis shows the confusion that can occur by attempting to apply the *Salmon Rivers* definition of economic loss to a transaction not involving the purchase of defective property. The definition of economic loss stated in *Salmon Rivers* and utilized in *Tusch Enterprises v. Coffin*; *Duffin v. Idaho Crop Imp. Ass'n*; *Ramerth v. Hart*; *Blahd v. Richard B. Smith, Inc.*; and *Aardema v. U.S. Dairy Systems, Inc.*, does not apply in cases involving the negligent rendition of services because such cases do not involve the purchase of defective property.[4]

---

[3] Although one neon sign and one transformer may have been defective, Taco Time did not purchase those items from Subcontractor.

[4] *Ramerth v. Hart*, 133 Idaho 194, 983 P.2d 848 (1999), can be read as holding that the negligent performance of services causing damage to the property being worked on is merely economic loss for which there is no recovery. Such a reading is incorrect. In *Ramerth* a mechanic was alleged to have negligently performed maintenance on an airplane, causing damage to its engine and airframe. Applying the *Salmon Rivers* definition of economic loss, the Court held that "the damages to the aircraft and engine alleged in this case were purely economic and, therefore,

6

For example, in *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 583 P.2d 997 (1978), we did not use the *Salmon Rivers* definition of economic damages when deciding whether a contractor performing a construction project in a business district could be liable for economic damages suffered by a business allegedly due to the contractor's negligence. The contractor and a city had entered into a contract for an extensive construction project that included removing and replacing the streets, sidewalks, sewer and water lines, electrical services, and traffic control devices in the downtown business district. The contract required the contractor to take certain actions to minimize the disruption to the businesses within the project area. A business brought an action contending that it was a third party beneficiary of the contract and that it was entitled to recover lost profits resulting from a decreased flow of customers allegedly caused by the contractor's negligence. The business did not contend that contractor had harmed the business's property.

We characterized the business's claim as follows, "The damages claimed by the plaintiff, lost profits, are purely economic losses allegedly suffered as a result of the defendant's negligent diversion of prospective customers of the plaintiff." *Id.* at 468, 583 P.2d at 1003. We then stated, "As a general rule, no cause of action lies against a defendant whose negligence prevents the plaintiff from obtaining a prospective economic advantage." *Id*. The reason for that general rule is that "a contrary rule, which would allow compensation for losses of economic advantage caused by the defendant's negligence, would impose too heavy and unpredictable a burden on the defendant's conduct." *Id*. at 470, 583 P.2d at 1005. We noted that if the business could recover such losses, so could "not only all the other businesses in the area, but also their suppliers, creditors, and so forth, Ad infinitum [sic]." *Id*. We concluded: "If the [contractor's] liability were extended to all those who suffered any pecuniary loss, its liability could become

---

subject to the economic loss rule." *Id*. at 197, 983 P.2d at 851. That holding must be read in context of its facts. The mechanic performed the services for Morris, who later sold the airplane to Ramerth before the negligent work or any damage was discovered. Morris and Ramerth agreed to sue the mechanic together to recover damages for his negligence, and during the litigation Morris assigned to Ramerth any tort claim he may have. Ramerth was the purchaser of defective property (the airplane) that had not caused any damage to him or to any of his property. In that circumstance, the economic loss rule applied. The airplane's value was less than he thought when he purchased it. "Economic loss includes . . . commercial loss for inadequate value . . . ." *Salmon Rivers Sportsman Camps, Inc. v. Cessna Air, Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975). Morris had sold the airplane before the damage was discovered. At that point he did not have a cause of action against the mechanic because he had not suffered any loss from the mechanic's negligence. There was no allegation that the sale price of the airplane was reduced because of such negligence.

grossly disproportionate to its fault. Such potential liability would unduly burden any construction in a business area." *Id.* Although *Just's* was decided three years after *Salmon Rivers*, we did not use the *Salmon Rivers* definition of economic damages. Because *Just's* did not involve the purchase of defective property, such definition did not apply.

The economic loss rule does not limit the damages recoverable in a negligence action. "Unless an exception applies, the economic loss rule prohibits recovery of *purely* economic losses in a negligence action because there is no duty to prevent economic loss to another." *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 300, 108 P.3d 996, 1000 (2005) (emphasis added). Damages from harm to person or property are not *purely* economic losses. "[E]conomic loss is recoverable in tort as a loss parasitic to an injury to person or property." *Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1995). As we stated in *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 469, 583 P.2d 997, 1004 n.1 (1978):

> This case in which the plaintiff seeks recovery for purely economic losses without alleging any attending personal injury or property damage must be distinguished from cases involving the recovery of economic losses which are parasitic to an injury to person or property. It is well established that in the latter case economic losses are recoverable in a negligence action.

Rather, the economic loss rule limits the actor's duty so that there is no cause of action in negligence. "The elements of common law negligence have been summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980). The seller has no duty under the law of negligence to design, manufacture, or sell property that will conform to the buyer's economic expectations.

Thus, in *Clark v. International Harvester Co.*, 99 Idaho 326, 336, 581 P.2d 784, 794 (1978), this Court noted, "The law of negligence requires the defendant to exercise due care to build a tractor that does not harm person or property." We denied recovery, however, because "the law of negligence does not impose on International Harvester a *duty* to build a tractor that plows fast enough and breaks down infrequently enough for Clark to make a profit in his custom farming business." *Id.* (emphasis added). This Court acknowledged that such a duty could be created by contract, "but the law of negligence imposes no such duty." *Id.* Likewise, in *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978), the plaintiff

sought to recover "purely economic losses allegedly suffered as a result of the defendant's negligent diversion of prospective customers of the plaintiff." In deciding whether the plaintiff had a cause of action to recover purely economic losses under a negligence cause of action, we identified the issue as "whether the alleged negligent conduct of the defendant invaded an interest of the plaintiff to which the law of negligence extends its protection." *Id*. We stated, "We are concerned here with *the duties imposed by the law* upon the defendant with respect to the plaintiff's business, not with the duties imposed by the construction contract." *Id*. (emphasis added). We ultimately concluded that defendant did not owe plaintiff a duty to refrain from negligently interfering with plaintiff's prospective economic advantage.

In order to recover for common law negligence, there must be "a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct." *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980). "Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury." *Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966). "In circumstances involving the rendition of personal services the duty upon the actor is to perform the services in a workmanlike manner." *Hoffman v. Simplot Aviation, Inc.*, 97 Idaho 32, 37, 539 P.2d 584, 589 (1975); *accord Stephens v. Stearns*, 106 Idaho 249, 256, 678 P.2d 41, 48 (1984); *Harper v. Hoffman*, 95 Idaho 933, 935, 523 P.2d 536, 538 (1974). If the actor negligently damages another's property in performing those services, the actor is liable for such damage. *S.H. Kress & Co. v. Godman*, 95 Idaho 614, 515 P.2d 561 (1973) (if repairman called to start the boiler fire in a store negligently failed to check whether the steam pressure relief valve was operating properly and such negligence was a proximate cause of the boiler's explosion, repairman could be liable for the resulting damage to the store and its contents).

In this case, Taco Time alleges that Subcontractor negligently performed services in connecting the neon signs and transformers to electrical power and that such negligence caused a fire that damaged the restaurant and its contents. Such claim is not barred by the economic loss rule.

**B. Did the District Court Err in Denying Taco Time's Motion to Amend Its Complaint?**

9

In its complaint, Taco Time alleged that its total damages were $295,160; that it recovered one-half of those damages, plus interest, from the sign company; and that it was entitled to recover the other half of the damages, plus interest, from Subcontractor. Taco Time did so because it believed that it was required to deduct the amount of its settlement with the sign company from any recovery against Subcontractor. It later concluded that it was not required to do so, and on August 29, 2008, it filed a motion to amend its complaint. On the same day, it also filed the amended complaint alleging that Subcontractor was liable for the full amount of Taco Time's damages, plus interest. The district court denied Taco Time's motion to file its amended complaint on the ground that it too was barred by the economic loss rule. Taco Time now asks us to reverse the order denying its motion to file an amended complaint.

The district court's denial of Taco Time's motion to file an amended complaint was based upon the erroneous belief that Taco Time's cause of action was barred by the economic loss rule. We therefore vacate the order denying the motion to file an amended complaint.

## C. Is Taco Time Entitled to Recover Prejudgment Interest?

In its complaint and proposed amended complaint, Taco Time alleged that it was entitled to recover prejudgment interest. Subcontractor asserts on appeal that if Taco Time is permitted to file an amended complaint, it should not be permitted to request prejudgment interest. Because there was not a ruling on that issue by the district court, we will not address it on appeal. *Saint Alphonsus Diversified Care, Inc. v. MRI Associates, LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009).

## D. Is Taco Time Entitled to Recover Attorney Fees on Appeal?

Taco Time seeks an award of attorney fees under Idaho Code § 12-121. "Attorney fees can be awarded under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Farr West Investments v. Topaz Marketing L.P.*, 148 Idaho 272, 277, 220 P.3d 1091, 1096 (2009). Because Subcontractor's defense was not entirely frivolous, we decline to award attorney fees on appeal. *Beckstead v. Price*, 146 Idaho 57, 69, 190 P.3d 876, 888 (2008).

## IV.  CONCLUSION

We vacate the judgment and the order denying Taco Time's motion to file an amended complaint, and we remand this case for further proceedings that are consistent with this opinion. We award appellant costs on appeal, but not attorney fees.

Justices BURDICK, W. JONES, HORTON and Justice Pro Tem KIDWELL **CONCUR**.