# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44833

DONNA J. TAYLOR,   )
                   )
   Plaintiff-Appellant-Cross   )
Respondent,   )
                   )
v.   )
                   )
     **Boise, June 2018 Term**
R. JOHN TAYLOR, CONNIE TAYLOR   )
(aka CONNIE TAYLOR HENDERSON),   )     **Filed:  July 27, 2018**
JAMES BECK, MICHAEL W. CASHMAN   )
SR., and AIA SERVICES   )
CORPORATION, an Idaho corporation,   )     **Karel A. Lehrman, Clerk**
                   )
   Defendants-Respondents-   )
   Cross Appellants.   )
                   )

---

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County.  Hon. Jeff M. Brudie, District Judge.

District court judgment, reversed in part and remanded.

Roderick Bond Law Office, PLLC, Bellevue, WA.  Roderick C. Bond argued for appellant.

Martelle, Bratton & Associates, Eagle, for respondents.  Martin J. Martelle argued.

---

BURDICK, Chief Justice.

Donna Taylor (Donna) appeals the Nez Perce County district court's judgment regarding her Series A Preferred Shares in AIA Services Corporation (AIA). In 1987, Donna received 200,000 Series A Preferred Shares in AIA as part of a divorce settlement. Between 1987 and 1996, Donna, AIA, and other relevant parties entered into various stock redemption agreements with differing terms and interest rates. One such agreement was challenged in *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 563, 261 P.3d 829, 840 (2011). While the *Taylor* case was being litigated, AIA discontinued paying Donna for the redemption of her shares, prompting her to file suit. Donna alleged several causes of action against AIA, with the primary issue being whether

1

Donna is entitled to have her shares redeemed at the prime lending rate plus one-quarter percent. AIA contends that any agreement providing that interest rate is unenforceable, and instead Donna's redemption is governed by AIA's amended articles of incorporation, which provide the interest rate as the prime lending rate minus one and one-half percent. On reconsideration, the district court determined Donna's share redemption was governed by AIA's amended articles of incorporation, and as such, all but 7,110 of Donna's shares had been redeemed. Donna timely appealed, and AIA along with individual defendants, cross appealed several of the court's determinations. For reasons discussed below, we reverse in part and remand.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Donna and her husband Reed Taylor (Reed) created AIA in 1983. Donna and Reed divorced in 1987, and as part of the divorce settlement, Donna received 200,000 Series A Preferred Shares in AIA, making her the sole owner of all outstanding Series A Preferred Shares issued by the corporation. AIA's articles of incorporation were amended in 1987 to reflect Donna's agreement and provided that her shares would be redeemed over a fifteen-year amortization schedule at the prime lending rate less one and one-half percent. In 1993, Donna provided a written demand to AIA to redeem her Series A Preferred Shares. In December 1993, Donna began receiving payments from AIA in the amount of $15,000 per month, increasing in 1995 to $24,000 per month which she received until February 2001.

In January 1995, AIA sought to reorganize and Donna, along with AIA, entered into an agreement memorialized in four letters (1995 Letter Agreement) that changed the redemption of Donna's shares to a ten-year amortization schedule at the prime lending rate plus one-quarter percent. Later in 1995, AIA, Donna, and Reed entered into a stock redemption agreement that incorporated and referenced the 1995 Letter Agreement. The corporation quickly went into default and in 1996 the parties entered a restructured stock redemption agreement, the Series A Preferred Shareholder Agreement (1996 PSA). Pursuant to the 1996 PSA, AIA was to continue redeeming Donna's shares at the higher interest rate and over a ten-year amortization schedule. The agreement also made Donna's debt senior to Reed's debt.

Reed's brother, John Taylor (John), is the president and majority shareholder in AIA. In February 2001, John informed Donna that AIA was developing a new insurance program called CropUSA and asked that AIA be allowed to defer five months of payments to Donna. Donna agreed based on the personal guarantee of the five payments by Reed and John. Thereafter,

2

approximately $4,000 per month was paid to Donna from October 2001 to May 2004. In 2006, AIA was in default of its 1996 PSA with Donna and Reed. In December 2006, Donna and Reed entered into a written agreement that made the debt owed to Donna by AIA subordinate to the debt AIA owed to Reed; however, AIA was not informed of the subordination agreement. AIA continued to pay Donna $10,000 a month until June 2008 when AIA stopped payments based on pending litigation by Reed following the subordination agreement between Reed and Donna.

In January 2007, Reed sued AIA, John, and Connie Taylor (Connie) for numerous actions including breach of contract. In June 2008, while Reed's suit was pending, Donna filed suit against John, and later amended the suit to add Connie. The case was stayed pending the outcome of Reed's appeal. As to Reed's appeal, this Court affirmed the district court's determination that the 1996 PSA was illegal and unenforceable. *Taylor*, 151 Idaho at 563, 261 P.3d at 840. This Court held the agreement illegal because it violated the earned and capital surplus limitations in Idaho Code section 30-1-6 which is now repealed but was applicable at the time of the agreement.

Following this Court's ruling in Reed's case, John and Connie filed a motion for partial summary judgment, asking the district court to determine as a matter of law that Donna was owed $82,000 for her unredeemed shares, which Donna disputed. The district court denied the motion, lifted the stay, and informed the parties they could re-notice their 2009 motions and file additional briefing.

In May 2013, Donna filed a new complaint against AIA, John, Connie, James Beck (Beck) and Michael Cashman (Cashman), collectively "defendants." Donna asserted claims against AIA for breach of contract. Donna also asserted claims against John, Connie, Beck and Cashman for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment. Donna asserted fraud claims against all parties and a cause of action seeking declaratory relief or specific performance. The defendants counterclaimed that Donna breached the 1996 PSA when she signed the subordination agreement with Reed. Donna's 2008 and 2013 lawsuits were consolidated. The parties re-filed their 2009 motions with the defendants moving to dismiss and for summary judgment, and Donna moving for partial summary judgment.

In July 2014 the district court 1) granted defendants' motion to dismiss finding Donna's claims for fraud, breach of fiduciary duty, and aiding and abetting breaches of fiduciary duty were barred by the economic loss rule; 2) determined Donna failed to make a *prima facie* case

for unjust enrichment; 3) determined Reed was not an indispensable party and the guarantee agreement was not void as to John; 4) held that the parties agreed the 1996 PSA between Donna and AIA was illegal; 5) determined the 1995 Letter Agreement was valid and enforceable and the number of shares redeemed must be in conformance with that agreement; 6) denied Donna's motion for partial summary judgment on whether the defendants breached any fiduciary duty to Donna; and 7) held Donna did not breach the 1996 PSA because one cannot breach an illegal agreement.

Following the district court's July 2014 ruling, both parties moved for reconsideration and clarification. The defendants contended the 1995 Letter Agreement was unlawful because it provided for a higher interest rate than in the applicable 1987 articles of incorporation. The district court again determined the 1995 Letter Agreement was legal and enforceable. The court reasoned that while there was insufficient earned surplus to satisfy the first redemption option in Idaho Code section 30-1-6, AIA had not presented evidence the shareholders did not vote to authorize the use of capital surplus or the higher interest rate. The district court also reconsidered and determined Donna's claim for breach of fiduciary duty was not barred by the economic loss rule.

In June 2015, defendants again moved the district court to reconsider the legality of the 1995 Letter Agreement. The defendants filed a declaration to demonstrate there had never been a shareholder vote authorizing the use of capital surplus to redeem Donna's shares, nor was there any record the shareholders had ever authorized a higher interest rate than provided by the articles of incorporation. In light of the new evidence, the district court held that it was now uncontroverted that the AIA shareholders never voted to pay a higher interest rate than in the articles of incorporation and therefore the 1995 Letter Agreement was illegal. Thus, the court held, the only equitable remedy was to recalculate the redemptions of Donna's shares at the only lawful interest rate—the rate established by the 1987 articles of incorporation which was the prime lending rate minus one and one-half percent. The court determined that Donna had received $2,696,797.80 in payments to redeem her shares since 1993. Using a calculation provided by AIA, the court held that applying the lawful rate of prime minus one and one-half percent, all but 7,110 of Donna's shares had been redeemed.  Thus, the court entered judgment 1) dismissing Donna's claims for breach of the 1995 Letter Agreement and 1996 PSA; 2) dismissing Donna's claims for fraud and aiding and abetting fraud; 3) dismissing Donna's claim

4

for unjust enrichment; 4) that Donna holds 7,110 unredeemed Series A Preferred Shares in AIA; and 5) dismissing AIA's counterclaim that Donna breached the 1996 PSA.

Donna subsequently moved for reconsideration and to set aside the judgment, which the district court denied. Donna timely appealed to this Court.

## II. ISSUES ON APPEAL

1. Whether the 1996 Series A Shareholder Agreement (1996 PSA) is illegal as to Donna.
2. Whether the 1995 Letter Agreement is illegal and unenforceable.
3. Whether the district court erred when it dismissed Donna's fraud claims.
4. Whether the district court erred when it dismissed Donna's claim for unjust enrichment.
5. Whether Donna can appeal the denial of her motion for summary judgment.
6. Whether a new judge should be assigned on remand.
7. Whether the district court erred in dismissing AIA's counterclaim for breach of contract.
8. Whether either party is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court employs the same standard as the district court." *Idaho Youth Ranch, Inc. v. Ada Cty. Bd. of Equalization*, 157 Idaho 180, 182, 335 P.3d 25, 27 (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)). "However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact." *Intermountain Real Props., LLC v. Draw, LLC*, 155 Idaho 313, 316–17, 311 P.3d 734, 737–38 (2013) (quoting *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 637, 272 P.3d 1263, 1268 (2012)).

"[W]hen reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). "This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Shea v. Kevic Corp.*, 156 Idaho 540, 545, 328 P.3d 520, 525 (2014).

## IV. ANALYSIS

**A.      1996 Series A Shareholder Agreement (1996 PSA).**

The parties agree the 1996 PSA is illegal but disagree as to whether or not it can still be enforced. Donna argues it is enforceable as to Donna if Reed is severed from the agreement, or alternatively, under an exception to the illegality doctrine. The district court determined that the parties agreed the 1996 PSA between Donna and AIA is illegal for the same reason Reed's agreement was illegal, but did not address the exceptions to the illegality doctrine. For the reasons discussed below, the 1996 PSA is illegal and unenforceable.

"'An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy,' and such a contract 'is illegal and unenforceable.'" *Taylor*, 151 Idaho at 564, 261 P.3d at 841 (quoting *Farrell v. Whiteman*, 146 Idaho 604, 609, 200 P.3d 1153, 1158 (2009)). "[W]hen the consideration for a contract explicitly violates a statute, the contract is illegal and unenforceable." *Id.*

> The general rule is that a contract prohibited by law is illegal and unenforceable. A contract which is made for the purpose of furthering any matter or thing prohibited by statute is void. This rule applies on the ground of public policy to every contract which is founded on a transaction prohibited by statute. The Idaho Court of Appeals has suggested that where a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition or to the ignorance of the parties as to the prohibiting statute.

*Id.* at 564–65, 261 P.3d 829, 841–42 (quoting *Trees v. Kersey*, 138 Idaho 3, 6–7, 56 P.3d 765, 768–69 (2002)).

Idaho Code section 30-1-6, now repealed, was applicable at the time the parties entered the 1996 PSA. Section 30-1-6 provided in relevant part that a corporation can purchase its own shares but that,

> purchases of its own shares, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted earned surplus available therefor, and, if the articles of incorporation so permit or with the affirmative vote of the holders of a majority of all shares entitled to vote thereon, to the extent of unreserved and restricted capital surplus available therefor.

"Thus, pursuant to I.C. § 30-1-6, a corporation is generally authorized to use earned surplus to redeem shares; whereas, the use of capital surplus to redeem shares requires authorization either in the articles of incorporation or by majority shareholder vote." *Taylor*, 151 Idaho at 559, 261 P.3d at 836 (citing I.C. § 30-1-6 (1995)). "I.C. § 30-1-6 served an important public policy function—to protect the interests of minority stockholders and creditors from the

6

surreptitious depletion of a corporation's capital assets." *Id.* at 575, 261 P.3d at 852 (J. Jones specially concurring). We previously held the 1996 PSA illegal under Section 30-1-6. *Id.* at 565, 261 P.3d at 842 ("Because AIA Services had no earned surplus and was not authorized to use capital surplus when it agreed to purchase Reed Taylor's shares, the [1996 PSA] violated the earned and capital surplus limitations of I.C. § 30-1-6. . . . The [1996 PSA] is thereby prohibited by law and is illegal.").

In this case, the parties agree that the 1996 PSA is illegal. However, Donna argues that the agreement would be legal as to her if terms concerning Reed were severed. This argument is unavailing. Indeed, "[w]here a transaction is composed of both benign and offensive components and the different portions are severable, the unobjectionable parts are generally enforceable." *Farrell*, 146 Idaho at 611, 200 P.3d at 1160 (quoting *Nelson v. Armstrong*, 99 Idaho 422, 426, 582 P.2d 1100, 1104 (1978). Here, however, severing Reed from the agreement does not make it enforceable. As noted, the 1996 PSA was held illegal by this Court because AIA did not have any earned surplus, nor was it authorized to use capital surplus at the time it entered the 1996 PSA. *Taylor*, at 565, 261 P.3d at 842. Severing Reed from the agreement does not create earned surplus nor does it create authorization to use capital surplus. Thus, severing Reed from the agreement has no impact on the agreement's illegality.

Donna contends that even though the 1996 PSA is illegal, it should still be enforced under the public policy or *in pari delicto* exceptions to the illegality doctrine. We decline to address this argument, as Donna has raised this argument for the first time on appeal. *See Obenchain v. McAlvain Const., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006) ("Appellate court review is 'limited to the evidence, theories and arguments that were presented . . . below.'") (quoting *State v. Vierra*, 125 Idaho 465, 469, 872 P.2d 728, 731 (Ct. App.1994)). "The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal." *Doe v. Doe*, 160 Idaho 854, 860, 380 P.3d 175, 181 (2016) (quoting *Gordon v. Hedrick*, 159 Idaho 604, 612, 364 P.3d 951, 959 (2015)). Though Donna maintains these issues were raised before the district court, a review of the record reveals Donna argued only that the parties be left where the court found them, rather than putting forth any argument as to specific exceptions to the illegality doctrine. Accordingly, we do not address this argument on appeal. Thus, the 1996 PSA is illegal and unenforceable.

**B.      1995 Letter Agreement.**

The next issue is whether the terms in the 1995 Letter Agreement are enforceable. While the district court initially determined the 1995 Letter Agreement was enforceable, on reconsideration, AIA presented evidence that shareholders had never voted to pay Donna a higher interest rate than authorized in the articles of incorporation. In light of this evidence, the district court found the 1995 Letter Agreement was illegal and unenforceable. For reasons discussed below, the district court's analysis was in error.

As noted, Idaho Code section 30-1-6 authorized a corporation to purchase its shares from earned surplus, or from capital surplus if authorized in the articles of incorporation or by a shareholder vote. *See Taylor*, 151 Idaho at 559, 261 P.3d at 836. The four letters forming the 1995 Letter Agreement were dated January 11, 1995, March 22, 1995, July 18, 1995, and August 10, 1995. The first letter of the 1995 Letter Agreement was entered into on January 11, 1995, while the 1989 amended articles of incorporation were in effect. The 1989 amended articles of incorporation authorized AIA to use capital surplus to redeem its shares. Thus, Donna contends, because the 1989 articles authorized the use of capital surplus, the 1995 Letter Agreement does not violate Idaho Code section 30-1-6. We agree. The record discloses that AIA intended the agreement between the parties to be formed by the January 11, 1995 letter. The 1996 PSA states that AIA is redeeming the outstanding Series A Preferred Stock pursuant to:

> (i) Company's articles of incorporation and (ii) that certain letter agreement among the parties hereto and Cumer L. Green ("Green") dated January 11, 1995, *as amended by* (a) that certain letter from Green to Richard A Riley ("Riley") dated March 22, 1995, (b) that certain letter agreement among the parties, Green and Richard W. Campanaro dated July 18, 1995, and (c) that certain letter from Green to Riley dated August 10, 1995 (collectively, the "Series A Preferred Shareholder Letter Agreements").

(emphasis added). Thus, AIA stated in the 1996 PSA that the January 11, 1995 letter was to serve as the agreement between the parties, and subsequent letters served only as amendments to the earlier agreement. The January 11, 1995 Letter Agreement was entered into when the 1989 amended articles of incorporation were in effect, which authorized the use of capital surplus. Thus, the January 11, 1995 letter did not violate Idaho Code section 30-1-6 in the same way the 1996 PSA did. *See Taylor*, 151 Idaho at 559, 261 P.3d at 836. Therefore, the only issue is what effect is given to the terms providing for the higher interest rate and shorter amortization schedule that are contained in the January 11, 1995 letter. As discussed below, the terms

8

governing Donna's redemption in the letter conflicted with the terms in the articles of incorporation, and therefore constituted an ultra vires act, rather than an illegal one. Thus, when the district court determined that the 1995 Letter Agreement was illegal because it provided for a higher interest rate than in the articles, it erred.

An ultra vires act is an act that is "[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law." Ultra Vires, *Black's Law Dictionary* 1755 (10th ed. 2014); *see also Carlson*, 17 Idaho at 742–433, 107 P. at 755–56. Idaho Code section 30-1-7 was applicable at the time of the agreement and provided for an affirmative defense of ultra vires, stating in relevant part:

> No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:
> (a) In a proceeding by a shareholder against the corporation to enjoin the doing of any act or the transfer of real or personal property by or to the corporation. . . .
> (b) In a proceeding by the corporation . . .
> (c) In a proceeding by the attorney general . . .

"[T]he defense of ultra vires is special, must be specially pleaded and proven, and cannot be raised for the first time on appeal." *Wallace Bank & Tr. Co. v. First Nat. Bank*, 40 Idaho 712, 722, 237 P. 284, 287 (1925).

We have said "that the doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." *Power Cty. v. Evans Bros. Land & Live Stock Co.*, 43 Idaho 158, 166, 252 P. 182, 183 (1926). "Especially is this true where the contract has been executed in good faith by the party seeking to enforce it." *Id.*, 252 P. at 183–84. Regarding contracts, this Court has held that competent parties who have received the benefit of the contract are estopped from asserting a defense of ultra vires. *Id.* at 168, 252 P. at 184 ("it would be eminently unjust both to plaintiff and the other sureties were the defendant company permitted to escape the consequences of this contract evidently undertaken in good faith by all of the parties, and in good faith performed by all of them save appellant."); *Fremont Cty. v. Warner*, 7 Idaho 367, 370, 63 P. 106, 107 (1900) ("the defendants were competent parties, and, having received the benefits of the contract, they are now estopped from setting up the defense of ultra vires.").

9

In this case, the 1995 Letter Agreement was an ultra vires act because it purported to authorize the redemption of Donna's shares at an interest rate higher than authorized in the articles of incorporation without shareholder approval. Thus, the "corporation was without capacity or power to do such act" when it entered into the 1995 Letter Agreement with Donna. I.C. § 30-1-7 (1995). However, AIA did not plead a defense of ultra vires, and it cannot be raised for the first time on appeal. *Meholin v. Carlson*, 17 Idaho 742, 743, 107 P. 755, 756 (1910) ("The question of ultra vires must be pleaded, and cannot for the first time be raised in the appellate court."). Even if AIA had pleaded a defense of ultra vires, which it did not, the defense would not be successful here. The 1995 Letter Agreement was entered into in good faith by competent parties, and AIA received the benefit of the agreement in that it allowed AIA the opportunity to reorganize. AIA cannot now assert ultra vires to "escape the consequences of this contract[.]" *See Power Cty.*, 43 Idaho at 168, 252 P. at 184. Because the 1995 Letter Agreement was an ultra vires act, rather than an illegal act, the 1995 Letter Agreement is enforceable. I.C. §30-1-7 ("No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act"). Accordingly, the district court's order that the 1995 Letter Agreement is unenforceable is reversed.

**C.    The district court erred when it dismissed Donna's fraud claim.**

The district court dismissed Donna's claims for fraud, determining the tort claim was barred by the economic loss rule. Donna contends that she is alleging fraud which is an intentional, rather than negligent tort, so her claim is not barred by the economic loss rule. For reasons discussed below, the district court erred in dismissing Donna's fraud claim.

"The economic loss rule is a judicially created doctrine that applies to negligence cases." *Path to Health, LLP v. Long*, 161 Idaho 50, 56, 383 P.3d 1220, 1226 (2016). "Unless an exception applies, the economic loss rule prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another." *Brian & Christie, Inc. v. Leishman Elec., Inc.*, 150 Idaho 22, 28, 244 P.3d 166, 172 (2010) (quoting *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 300, 108 P.3d 996, 1000 (2005)). "There are two exceptions to the general rule which prevents a party from recovering purely economic loss in a tort claim; those two exceptions are, (1) where a special relationship exists between the parties,

or (2) where unique circumstances require a reallocation of the risk." *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 792, 215 P.3d 505, 512 (2009).

As noted, prior cases have limited application of the economic loss rule to negligence causes of action. *See Long*, 161 Idaho at 56, 383 P.3d at 1226 ("The economic loss rule . . . applies to negligence cases."). "The economic loss rule applies to negligence cases in general; its application is not restricted to products liability cases." *Leishman Elec., Inc.*, 150 Idaho at 26, 244 P.3d at 170 (quoting *Ramerth v. Hart*, 133 Idaho 194, 197, 983 P.2d 848, 851 (1999)). This is because "the economic loss rule limits the actor's duty so that there is no cause of action in negligence." *Leishman Elec., Inc.*, 150 Idaho at 28, 244 P.3d at 172. "[A] contrary rule, which would allow compensation for losses of economic advantage caused by the defendant's negligence, would impose too heavy and unpredictable a burden on the defendant's conduct." *Just's, Inc. v. Arrington Const. Co.*, 99 Idaho 462, 470, 583 P.2d 997, 1005 (1978).

In this case, Donna has alleged the defendants committed fraud, which is an intentional tort. *See Hegg v. I.R.S.*, 136 Idaho 61, 62, 28 P.3d 1004, 1005 (2001) ("Fraud is a form of intentional tort."). As discussed, the economic loss rule is applicable in *negligence* actions, because there is "no duty to prevent economic loss to another." *See Leishman Elec., Inc.*, 150 Idaho at 28, 244 P.3d at 172 (quoting *Blahd*, 141 Idaho at 300, 108 P.3d at 1000). Donna is not pursuing a negligence cause of action; rather, she has alleged the defendants committed the intentional tort of fraud. Thus, the economic loss rule does not bar Donna's cause of action for fraud. Moreover, a claim for fraud will nearly always involve claims for economic loss, and if the economic loss rule operated to bar fraud claims, it would vitiate fraud causes of action. *See Miller v. Idaho State Patrol*, 150 Idaho 856, 865, 252 P.3d 1274, 1283 (2011) (in defining the relevant legal rule in a qualified immunity case, we stated, "[t]he Court should not define the right too generally, as doing so would essentially vitiate the qualified-immunity doctrine."). Here, while Donna's fraud pleadings may not have the requisite particularity required by Idaho Rule of Civil Procedure 9(b), the district court did not dismiss on those grounds. Instead, it determined the economic loss rule barred her claim, which was in error.

**D.     The district court properly dismissed Donna's claim for unjust enrichment.**

The district court determined that Donna's deferment of five months of stock redemption payments when AIA developed CropUSA benefited AIA, not the individual defendants. The district court also stated there was no evidence Donna intended the individual defendants to

benefit; rather, Donna was pursuing her own financial advantage. Therefore, the court held, Donna could not recover against the individual defendants under an unjust enrichment theory.

On appeal, Donna states, "[t]o the extent that this Court will consider matters outside of the record, Donna presented more than sufficient evidence to survive summary judgment on her unjust enrichment claim." Donna does not, however, specifically state what this evidence is, or how it supports her claim. As this Court has said, "[w]e are restricted to the record before us and may not consider matters outside the record." *State v. Flint*, 114 Idaho 806, 809, 761 P.2d 1158, 1161 (1988) (quoting *Parsons v. State*, 113 Idaho 421, 428, 745 P.2d 300, 307 (Ct. App. 1987)). We affirm the district court's dismissal of Donna's unjust enrichment claim, as this Court cannot consider evidence outside of the record on appeal. *Rizzo v. State Farm Ins. Co.*, 155 Idaho 75, 80, 305 P.3d 519, 524 (2013).

### E.     We will not review the district court's denial of summary judgment.

Donna asks this Court to overrule precedent and allow her to appeal the denial of her motion for partial summary judgment. The defendants contend that if this Court does so, that we consider the district court's determination that the economic loss rule does not bar Donna's breach of fiduciary duty claims. We decline to do so. This Court recently reaffirmed we will not review a district court's denial of a motion for summary judgment when the district court was not acting in an appellate capacity, and the appeal was not permissive. *Litke v. Munkhoff*, No. 44735, slip op. at 3 (Idaho Apr. 27, 2018). Here, the district court was not acting in an appellate capacity, nor was this a permissive appeal. Thus, Donna is not permitted to appeal the denial of her motion for partial summary judgment, nor do we consider whether the district court erred when it determined the economic loss rule does not bar Donna's breach of fiduciary duty claims.

### F.     We do not appoint a new judge on remand.

Donna requests that if this case is remanded a new judge be appointed. Donna contends that because this case has been ongoing for nearly ten years, a new judge would "bring a fresh perspective" and "eliminate any possible concern of potential bias." Donna cites to *Capstar Radio Operating Company v. Lawrence*, 153 Idaho 411, 422, 283 P.3d 728, 739 (2012) which dealt with a motion to disqualify for cause. In this case, Donna did not file a motion to disqualify for cause, nor has Donna cited any instances of bias by Judge Brudie. Accordingly, a new judge need not be appointed.

### G.     The district court properly dismissed AIA's counterclaim for breach of contract.

12

AIA contends Donna breached the 1996 PSA and the 1995 Letter Agreement when she entered into a subordination agreement with Reed that subordinated the debt AIA owed Donna to the debt AIA owed Reed. The district court dismissed the claim, stating that the 1996 PSA was an illegal agreement, and Donna cannot have breached an illegal agreement. The district court also stated Donna did not breach the 1995 Letters Agreement because Donna did not need AIA's consent to subordinate her debt to Reed. We affirm the district court's dismissal.

As discussed, the 1996 PSA is an illegal agreement and is therefore void and unenforceable. One cannot breach an illegal and void agreement. *See AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 168, 307 P.3d 176, 185 (2013) (affirming the district court's granting of summary judgment in favor of a party against whom breach of contract was claimed because the contract was illegal and therefore void.). Because the 1996 PSA is illegal and therefore void, Donna did not breach the agreement when she entered into the subordination agreement with Reed.

As to the 1995 Letter Agreement, that agreement did not contain any limitation on Donna's ability to subordinate her right to be paid. While the 1996 PSA contained a provision that required a written agreement by all parties to modify any agreement term, no such requirement was contained in the 1995 Letter Agreement. "The burden of proving the existence of a contract and fact of its breach is upon the plaintiff, and once those facts are established, the defendant has burden of pleading and proving affirmative defenses, which legally excuse performance." *Tapadeera, LLC v. Knowlton*, 153 Idaho 182, 186, 280 P.3d 685, 689 (2012) (quoting *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 747, 9 P.3d 1204, 1213 (2000)). Here, AIA has alleged Donna breached the contract through its counterclaim and cross appeal, and thus it is AIA's burden to prove Donna breached the contract. AIA has not done so, as Donna was not prevented from subordinating the debt AIA owed her in the 1995 Letter Agreement. Accordingly, we affirm district court's dismissal of AIA's counterclaim.

## H.     Attorney fees on appeal.

Both parties request attorney fees on appeal pursuant to I.A.R. 40, I.A.R. 41, and I.C. § 12-121. Donna contends she is entitled to attorney fees on appeal because the defendants' defense was frivolous and they engaged in widespread corporate malfeasance. The defendants contend Donna is not entitled to attorney fees on appeal because she did not prevail below and

because the defendants' defense was not frivolous. Defendants also contend those fees should be assessed against Donna's counsel under I.R.C.P. 11(c)(3)-(4).

In any civil action, this Court may award reasonable attorney fees to the prevailing party. I.C. § 12-121; *Doe v. Doe (2016-7)*, 161 Idaho 67, 79, 383 P.3d 1237, 1249 (2016). "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.'" *Id.* (citation omitted). However, "[f]ees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016).

Here, we cannot say that either party's arguments were frivolous, unreasonable, or without foundation. Given the lengthy and arduous history of this case, we cannot say either party was unreasonable in their attempts to appeal or defend their positions. Accordingly, we do not award attorney fees to either party pursuant to Idaho Code section 12-121.

While we do not award fees under section 12-121, we reach a different result under Idaho Code section 12-120(3). Donna contends fees can be awarded under Section 12-120(3) because the redemption of her shares is a commercial transaction between her and AIA. Section 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

This Court has stated that "attorney fees under I.C. § 12-120(3) are not appropriate where the commercial transaction is illegal." *Taylor*, 151 Idaho at 574, 261 P.3d at 851. This Court explained:

> While both parties' claims are based upon the commercial relationship between them, neither party should be permitted to claim the benefit of I.C. § 12-120(3). The commercial transaction was illegal. In *Kunz v. Lobo Lodge, Inc.*, 133 Idaho 608, 612, 990 P.2d 1219, 1223 (Ct. App. 1999), the Court of Appeals held the district court erred in awarding attorney fees under Idaho Code § 12-120(3) because the basis of the commercial transaction was illegal (the leases at issue were entered into knowingly and in direct contravention of a municipal criminal ordinance). The Court of Appeals, therefore, concluded the parties should be left where they were found. . . . *Nash v. Meyer*, 54 Idaho 283, 31 P.2d 273 (1934) (citing as fundamental the position that rights based on violation of law will never be enforced by the courts and that when a transaction is shown to be illegal

14

because of contravention of a statute, a court is justified in its refusal to uphold the transaction in any way); *Libby v. Pelham*, 30 Idaho 614, 166 P. 575 (1917) (asserting the position that if a transaction is illegal because in contravention to a statute, it is sufficient to justify a refusal to uphold the transaction in any way, leaving the parties in the situation in which they have voluntarily placed themselves).

*Id.* (quoting *Trees*, 138 Idaho at 12–13, 56 P.3d at 774–75).

In this case, Donna filed this lawsuit to enforce the terms of a commercial transaction (the 1996 PSA or alternatively, the 1995 Letter Agreement). The 1996 PSA is illegal, and fees cannot be awarded for attempting to enforce it. *Taylor*, 151 Idaho at 574, 261 P.3d at 851. However, the 1995 Letter Agreement is not an illegal agreement. Because Donna has prevailed on appeal in enforcing the terms of a commercial transaction, she is entitled to an award of attorney fees limited to that portion of her appeal under section 12-120(3).

## V.    CONCLUSION

We reverse the district court's dismissal of Donna's breach of contract claim as it relates to the 1995 Letter Agreement, and we remand for proceedings consistent with this opinion. We also reverse the district court's dismissal of Donna's fraud claims and remand for proceedings consistent with this opinion. We affirm the district court's dismissal of Donna's unjust enrichment claim. We also affirm the district court's dismissal of AIA's counterclaim against Donna. We award attorney fees to Donna limited to enforcing the 1995 Letter Agreement on appeal. Costs on appeal to Donna.

Justices BRODY, BEVAN and Justices Pro Tem GRATTON and HIPPLER, **CONCUR.**

15